No. 60,991

STATE OF KANSAS, *Appellee,* v. LOWELL THOMAS EATON, *Appellant.*

(769 P.2d 1157)

Opinion filed March 3, 1989.

*Jessica R. Kunen*, chief appellate defender, argued the cause and was on the briefs for appellant.

*Susan E. Jones*, special prosecutor, argued the cause, and *Robert T. Stephan*, attorney general, was with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The defendant, Lowell Thomas Eaton, appeals his convictions of one count of indecent liberties with a child (K.S.A. 21-3503) and one count of aggravated criminal sodomy (K.S.A. 21-3506). The State cross-appeals on a question reserved.

The victim in the case, B.M., was seven years old at the time the alleged acts occurred. B.M. lived with her grandmother. B.M.'s five-year-old brother, her teenaged aunt, and an uncle also lived with the grandmother. The defendant was a friend of B.M.'s grandmother and, at times, baby-sat with the children. On occasion, B.M. and her brother would spend evenings and weekends with the defendant.

In late November 1986, B.M. indicated to her aunt that the

defendant had been touching her. B.M.'s grandmother was informed and she notified the sheriff. She was instructed to take B.M. to see Dr. Stephen C. Meyers, a pediatrician in Garden City. Dr. Meyers examined B.M., and at trial he testified that he found no physical evidence of vaginal or anal intercourse. He further testified that the hymen was still intact, and that, during the course of the examination, B.M. denied that the defendant had put his penis in her mouth.

Officer Linda Morgan, a volunteer reserve deputy sheriff, conducted two interviews with B.M. Prior to each interview, B.M.'s grandmother talked with B.M. and compiled a list of all the sexual acts the defendant had allegedly done to B.M. There were several inconsistencies among the lists, interviews, and B.M.'s testimony. At trial, she testified that the defendant put his penis in her mouth and that he had tried to put his penis in her "pee-pee" three times. The testimony was inconsistent with what she told Dr. Meyers and with the second list. Although the lists indicated that the defendant had put his finger in B.M.'s vagina, she did not indicate that to the officer at the time of the two interviews.

B.M.'s brother testified that he had observed the defendant put his "thing" in B.M.'s mouth. This observation was allegedly made through the bedroom window while the brother was playing in the defendant's back yard.

The defendant did not testify, but did call several witnesses to testify for the defense. A friend of defendant was one such witness. She testified, among other things, that B.M.'s grandmother brought B.M. and her brother over to the defendant's house on November 15, 1986, several days after the alleged incidents, and that B.M. ran over to the defendant, sat in his lap, kissed him on the cheek, and told him she loved him.

The State called Carol Lightner, a staff social worker at the Garden City Mental Health Center, as a rebuttal witness. She testified as to her education and work experience treating sexually abused children. The defendant objected on the grounds her testimony would be improper rebuttal. Prior to the trial court's sustaining defendant's objection, the prosecuting attorney stated that "the State intends to offer the expert testimony of Mrs. Lightner to rebut the expert testimony that Mr. Pierce offered through Dr. Meyers."

The jury found the defendant guilty on both counts. Additional facts will be stated as necessary to determine the issues raised on appeal.

The defendant first contends that the district court erred in failing to instruct the jury on the crime of aggravated sexual battery as a lesser included offense of the crime of indecent liberties with a child. The defendant relies upon *State v. Hutchcraft*, 242 Kan. 55, 744 P.2d 849 (1987). This court's decision in *Hutchcraft* was subsequently limited by our decision in *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), which is controlling in the present case. In *Fike*, we concluded that aggravated sexual battery is not a lesser included offense of indecent liberties with a child. 243 Kan. at 373. We find no merit in the defendant's argument.

The defendant also argues that the district court erred in failing to instruct the jury on attempted aggravated criminal sodomy. One witness for the defendant testified that the complaining witness had told him that an adult man "had attempted to touch her with his fingers, . . . had tried to place his thing in her mouth." The witness later testified that B.M. also denied that the man had engaged in "oral sex with her by sticking his penis in her mouth." Had the jury credited this testimony, it could have found that the defendant had attempted to commit aggravated criminal sodomy, but failed to complete the attempt. The district court, therefore, erred in failing to instruct upon the crime of attempted aggravated criminal sodomy.

The State contends that the defendant waived his right to an instruction on attempted aggravated criminal sodomy when he failed to propose an instruction on the offense. We find no merit in the State's argument. Under K.S.A. 21-3107(3), a trial court has an affirmative duty to instruct the jury as to all lesser included crimes of which the defendant might reasonably be convicted. This duty applies whether or not the defendant has requested the proposed instruction. *State v. Marks*, 226 Kan. 704, 713, 602 P.2d 1344 (1979).

The State also contends that an instruction on the crime of attempted aggravated criminal sodomy would have been inappropriate, since other evidence presented in the case indicated that the crime had been completed. See *State v. Grauerholz*, 232 Kan. 221, 654 P.2d 395 (1982). However, the duty to instruct on

all lesser included offenses does not arise simply where the preponderance of the evidence introduced in the case supports a conviction upon the lesser offense. Instead, an instruction upon a lesser included offense is required even though the evidence supporting the lesser offense may be weak and inconclusive. *State v. Staab*, 230 Kan. 329, 339, 635 P.2d 257 (1981).

The defendant next argues that the trial court erred in permitting B.M. to testify by means of closed-circuit television, pursuant to K.S.A. 22-3434. K.S.A. 22-3434 provides in part:

"(a) On motion of the attorney for any party to a criminal proceeding in which a child less than 13 years of age is alleged to be a victim of the crime, the court may order that the testimony of the child be taken:

"(1) In a room other than the courtroom and be televised by closed-circuit equipment in the courtroom to be viewed by the court and the finder of fact in the proceeding; or

"(2) outside the courtroom and be recorded for showing the courtroom before the court and the finder of fact in the proceeding if: (A) The recording is both visual and aural and is recorded on film or videotape or by other electronic means; (B) the recording equipment is capable of making an accurate recording, the operator of the equipment is competent and the recording is accurate and has not been altered; (C) every voice on the recording is identified; and (D) each party to the proceeding is afforded an opportunity to view the recording before it is shown in the courtroom, and copy of a written transcript is provided to the parties.

"(b) At the taking of testimony under this section:

"(1) Only the attorneys for the defendant, the state and the child, any person whose presence would contribute to the welfare and well-being of the child and persons necessary to operate the recording or closed-circuit equipment may be present in the room with the child during the child's testimony.

"(2) only the attorneys may question the child;

"(3) the persons operating the recording or closed-circuit equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during the child's testimony but does not permit the child to see or hear them; and

"(4) the court shall permit the defendant to observe and hear the testimony of the child in person, but shall ensure that the child cannot hear or see the defendant.

"(c) If the testimony of a child is taken as provided by this section, the child shall not be compelled to testify in court during the proceeding."

Prior to trial, the State moved the trial court for an order admitting the videotapes of the two pretrial interviews of B.M., pursuant to K.S.A. 22-3433 or, in the alternative, allowing B.M. to testify by closed-circuit television, pursuant to K.S.A. 22-3434. The only rationale offered by the State in support of the motion was the age of B.M. and that "[t]aking the testimony·in this

manner would be in keeping with the intent of the Supreme Court of Kansas and the Legislature and should be ordered to protect the child-victim." The trial court denied the motion as to the two videotapes but granted permission to allow B.M. to testify by means of closed-circuit television, pursuant to K.S.A. 22-3434.

The closed-circuit testimony of B.M. was accomplished by placing in the jury room three chairs facing two large wooden booths with one-way glass fronts. The camera operator was in one booth and the defendant in the other. The defendant could observe B.M., but she could not see the defendant. The judge and jury could observe B.M. on a television screen set up in the courtroom. The judge and the attorneys could communicate by walkie-talkie.

At trial, B.M. testified in the jury room and the judge and jury observed her on the television screen in the courtroom. The defendant, although present in the jury room while B.M. testified, was hidden in one of the booths, observing her through the one-way glass.

The defendant contends that the procedure used to permit B.M. to testify violated his constitutional right to confront his accuser, and that K.S.A. 22-3434 is not capable of constitutional application. In support of his contention, the defendant relies upon the recent decision of the United States Supreme Court in *Coy v. Iowa*, 487 U.S. _____, 101 L. Ed. 2d 857, 108 S. Ct. 2798 (1988).

Writing for the United States Supreme Court in *Coy*, Justice Scalia stated that the Sixth Amendment confrontation clause guarantees more than those peripheral rights which have been found to be reasonably implicit in the clause, such as the right of cross-examination and the right to exclude certain hearsay statements. 101 L. Ed. 2d at 866. The confrontation clause also provides the defendant a literal right to physically confront those witnesses who testify against him in a face-to-face meeting before the trier of fact. See 101 L. Ed. 2d at 864. This guarantee of a literal right to physical confrontation was necessary to protect "'the core of the values furthered by the Confrontation Clause.'" 101 L. Ed. 2d at 864 (quoting *California v. Green*, 399 U.S. 149, 157, 26 L. Ed. 2d 489, 90 S. Ct. 1930 [1970]).

The United States Supreme Court acknowledged the disturb-

ing nature of the confrontation between victim and defendant in cases involving sex crimes, but found that the requirements of the confrontation clause were still binding:

"That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs." 101 L. Ed. 2d at 866.

Joined by Justices Brennan, Marshall, and Stevens, Justice Scalia refused to decide whether, like the peripheral rights involving cross-examination and the right to exclude hearsay statements, the core or literal right to physical confrontation was also subject to exceptions designed to further important public interests. 101 L. Ed. 2d at 867.

Even if such exceptions were to be permitted with regard to the core or literal right, "they would surely be allowed only when necessary to further an important public policy." 101 L. Ed. 2d at 867 (citing *Ohio v. Roberts*, 448 U.S. 56, 64, 65 L. Ed. 2d 597, 100 S. Ct. 2531 [1980]; *Chambers v. Mississippi*, 410 U.S. 284, 295, 35 L. Ed. 2d 297, 93 S. Ct. 1038 [1973]). The Court went further, finding that "a legislatively imposed presumption of trauma" in sex crime cases would not satisfy the requirements for an exception to the core right of confrontation; such exceptions, if any, require "individualized findings" that particular witnesses require special protection from the trauma of testimony. 101 L. Ed. 2d at 867.

Justice O'Connor (joined by Justice White) generally agreed with the opinion of the Court that the confrontation clause accords an independent, literal right to physically confront adverse witnesses. However, unlike the opinion of the Court, which refused to decide whether exceptions to the literal right were permissible, Justice O'Connor's concurring opinion found that this right was not absolute and was subject to exceptions where the procedure was necessary to further an important public policy. Justice O'Connor agreed that the defendant's confrontation clause rights had been violated in *Coy* because there had been no particularized findings of necessity under the Iowa statute. Any exceptions to the core right to physical confrontation must involve "a case-specific finding of necessity," which is not satisfied by "the type of generalized legislative finding of necessity present" in all cases involving sex crimes. 101 L. Ed. 2d at 869.

Like the Iowa statute at issue in *Coy*, neither K.S.A. 22-3433 (relating to the videotaping or other recording of the statement of a child-victim witness) nor K.S.A. 22-3434 (relating to the testimony of a child-victim witness through closed-circuit television) requires an individualized finding of trauma or a need for special protection. Aside from the technical requirements for the closed-circuit television procedure, K.S.A. 22-3434(a) contains only two substantive requirements for an order authorizing the use of closed-circuit television. First, one of the parties must move for an order authorizing the use of closed-circuit television. Second, the case must involve a criminal proceeding in which the alleged child-victim is less than 13 years of age. If these requirements are satisfied, the court can order the use of closed-circuit testimony of the child-victim witness, and the trial court must "ensure that the child cannot hear or see the defendant" during the child's testimony. K.S.A. 22-3434(b)(4).

Prior to *Coy*, this court upheld the constitutional validity of K.S.A. 22-3434 in *State v. Chisholm*, 243 Kan. 270, 755 P.2d 547 (1988), and *State v. Johnson*, 240 Kan. 326, 729 P.2d 1169 (1986), *cert. denied* 481 U.S. 1071 (1987). In *State v. Johnson*, this court held that K.S.A. 22-3434 satisfied the constitutional requirements of the Sixth Amendment confrontation clause. However, we analyzed the issue solely in the context of the constitutional requirements for the admission of out-of-court statements, following *Ohio v. Roberts*, 448 U.S. at 66. This court did not discuss the core or literal right to physical confrontation as an independent limitation upon the authority of the State to introduce closed-circuit television testimony.

The possibility of a core right to physical confrontation within the confrontation clause was denied by this court in *State v. Chisholm*, 243 Kan. 270. In *Chisholm*, the defendant contended that the use of closed-circuit television testimony violated his Sixth Amendment right to physically confront his accuser. This court held that the defendant's constitutional rights were satisfied by providing the defendant's attorney with the opportunity to cross-examine the child-victim witness:

"The only missing element in using closed-circuit television rather than live courtroom testimony is the witness's observation of the defendant and the court during her testimony. Arguments are made that this element encourages the truth in an adult witness. However, it is more likely to inspire terror, trauma, and

speechlessness in a small child. The legislature, in searching for the best means by which the truth could be ascertained, wisely provided an alternative method of adducing testimony of children under 13 years of age which preserves the right of cross-examination but eliminates the potential intimidation of a face-to-face meeting between an accused and a child victim." 243 Kan. at 274.

In the present case, the trial court made no individualized determination that the child-victim witness required special protection. As in *Johnson*, 240 Kan. 326, no evidence was presented that the child-victim witness would suffer from physical or emotional trauma if she were to testify at trial. Rather, the court based its determination upon the "legislatively imposed presumption of trauma" reflected in K.S.A. 22-3434 (*cf. Coy*, 101 L. Ed. 2d at 867). Under K.S.A. 22-3434, the legislature has presumed that the testimony of all witnesses under the age of 13 years in criminal cases may be excluded from the requirements of the Sixth Amendment confrontation clause. The United States Supreme Court in *Coy*, however, has clearly indicated that such generalized legislative presumptions are impermissible. *Coy* requires that we find that the trial court, in the present case, violated the defendant's Sixth Amendment confrontation rights in its order to utilize the closed-circuit television procedure.

We next turn to the constitutionality of K.S.A. 22-3434. It does not necessarily follow that K.S.A. 22-3434 is incapable of constitutional application because of our holding herein that it was unconstitutionally applied in the present case. Although that decision is dispositive of the defendant's appeal, we are compelled to address this broader issue of constitutionality due to the uncertainty and limited scope of the *Coy* decision and the need to provide guidance to the trial courts of this state.

In determining the constitutionality of K.S.A. 22-3434, we are guided by certain basic principles. Justice Holmes, speaking for the court in *In re Adoption of Baby Boy L.*, 231 Kan. 199, 643 P.2d 168 (1982), said:

"In examining the constitutionality of any statute there are certain basic principles which must be adhered to:

" 'We start with the proposition that the constitutionality of a statute is presumed; that all doubts must be resolved in favor of its validity, and before the statute may be stricken, it must clearly appear the statute violates the Constitution. It is the court's duty to uphold the statute under attack, if possible, rather than defeat it. If there is any reasonable way a statute may be construed constitutionally permissible, that should be done.' *Board of Greenwood County Comm'rs v. Nadel*, 228 Kan. 469, Syl. ¶ 1, 618 P.2d 778 (1980).

"'A statute, apparently valid upon its face, may be unconstitutional in its application to a particular set of facts, circumstances or classifications.' *Flax v. Kansas Turnpike Authority*, 226 Kan. 1, Syl. ¶ 6, 596 P.2d 446 (1979).

"The corollary of *Flax*, of course, is that a statute apparently void on its face may be constitutional when limited and construed in such a way as to uphold its constitutionality by reading the necessary judicial requirements into the statute. This has often been done when it is clear that such an interpretation will carry out the intent of the legislature. *State v. Motion Picture Entitled 'The Bet*,' 219 Kan. 64, 70, 547 P.2d 760 (1976); *State v. Gunzelman*, 210 Kan. 481, 502 P.2d 705 (1972); *State v. Hart*, 200 Kan. 153, 434 P.2d 999 (1967)." 231 Kan. at 223.

In applying these principles to the present case, it is clear that K.S.A. 22-3434 does not require an individualized determination in each case prior to allowing the nonconfrontational testimony by closed-circuit television. Is it equally clear that by reading in the required individualized determination in each case the intent of the legislature will be carried out? We conclude that it is.

In *State v. Vincent*, 159 Ariz. 418, 768 P.2d 150 (1989), the Arizona Supreme Court faced the same question regarding an Arizona statute similar to K.S.A. 22-3434. The court said:

"The first and narrower question is whether the statute may be construed as permitting videotaped testimony only upon an individualized showing of necessity. If the statute could not be construed to require such a finding, which *Coy* tells us is a constitutional threshold requirement, we would be obliged to hold the statute unconstitutional on its face.

"We find no difficulty in upholding A.R.S. § 13-4253 on this ground. Although it does not explicitly require a finding of necessity, the statute implicitly does so. It is cast in permissive rather than mandatory language, requiring the trial court to exercise discretion in its use.

"'The court, on motion of the prosecution, *may* order that the testimony of the minor be taken outside the courtroom and be recorded for showing in the courtroom before the court and the finder of fact in the proceeding. . . .'

"A.R.S. § 13-4253(B) (emphasis added). Although the statute does not indicate what factors bear on the trial court's decision, it necessarily contemplates that the trial judge will exercise discretion in accordance with the state and federal constitutions. Thus, we hold, section 13-4253(B) requires the trial judge to condition the substitution of videotaped testimony for live testimony upon an individualized showing of necessity." *State v. Vincent*, 26 Ariz. Adv. Rep. at 39.

The court then proceeded to determine the more difficult question of whether an individualized finding of trauma to the child will constitute an exception to the defendant's constitutional right to confrontation recognized in *Coy*. The Arizona Supreme Court, in answering that question in the affirmative, stated:

"Justice Scalia acknowledged that certain rights implicit in the Confrontation Clause—the right to cross-examine and to exclude out-of-court statements, for example—were not absolute and might give way to other important interests. But this, he wrote,

" 'is not the same as holding that we can identify exceptions, in light of other important interests, to the irreducible literal meaning of the clause: "a right to *meet face to face* all those who appear and give evidence *at trial." California v. Green*, 399 U.S. [149,] 175, 90 S. Ct. [1930,] 1943-44, [26 L. Ed. 2d 489, 506 (1970)] (Harlan, J., concurring) (emphasis added). We leave for another day, however, the question whether any exceptions exist. Whatever they may be, they would surely be allowed only when necessary to further an important public policy.'

"*Id.* at _____, 108 S. Ct. at 2803, 101 L. Ed. 2d at 867 (emphasis in original).

"Though the Court's opinion left the question of exceptions unsettled, two of the six participants in that opinion were willing to address it. Justice O'Connor, joined by Justice White, wrote in separate concurrence:

' "I would permit use of a particular trial procedure that called for something other than face-to-face confrontation if that procedure was necessary to further an important public policy. . . . The protection of child witnesses is, in my view and in the view of a substantial majority of the states, just such a policy. The primary focus therefore likely will be on the necessity prong. I agree with the Court that more than the type of generalized legislative finding of necessity present here is required. But if a court makes case-specific finding of necessity, as is required by a number of state statutes, . . . our cases support that the strictures of the Confrontation Clause may give way to the compelling state interest of protecting child witnesses.'

"*Id.* at _____, 108 S. Ct. at 2805, 101 L. Ed. 2d at 869-70 (O'Connor, J., concurring).

"The majority and concurring opinions in *Coy* highlight two competing principles, both of them deeply held. As Justice O'Connor observes, the protection of child witnesses is an important public policy; society has a natural concern to spare children the unnecessary rigors of appearance at trial. Yet, as Justice Scalia points out, the rigor of a face-to-face encounter between witness and accused has a fundamental function in the truth-discerning process. It impresses the witness with 'the seriousness and solemnity of the occasion,' *Wildermuth v. State*, 310 Md. 496, 513, 530 A.2d 275, 283 (1987), and aids the fact-finder in distinguishing the false accuser from the true, the uncertain from the sure.

"These competing objectives cannot be wholly reconciled. To whatever extent the law insists on face-to-face confrontation, it heightens the anxiety, and perhaps the trauma, of those who are willing to bear witness against crime. Yet 'a witness's reluctance to face the accused may be the product of fabrication rather than fear or embarrassment.' *Wildermuth*, 310 Md. at 511, 530 A.2d at 282 (quoting *Herbert v. Superior Court*, 117 Cal. App. 3d 661, 671, 172 Cal. Rptr. 850, 855 (1981)). To whatever extent the law cushions a witness against the crucible of confrontation, it diminishes a fundamental courtroom test of truth.

"Into this thicket of competing values and objectives, we step partway today. Our guidepost is the witness unavailability standard of *Ohio v. Roberts*, 448 U.S.

56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), as applied in *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987), and in two recent decisions of the Maryland courts." *State v. Vincent*, 26 Ariz. Adv. Rep. at 39-40.

The Arizona court analyzed and then relied upon the recent case of *Craig v. State*, 76 Md. App. 250, 544 A.2d 784 (1988). The Maryland statute provided an exception to face-to-face confrontation upon a judicial determination that such would "result in the child suffering serious emotional distress such that the child cannot reasonably communicate." 76 Md. App. at 275. The constitutionality of the Maryland statute had been upheld by the Maryland Court of Appeals prior to *Coy*. The constitutionality of the statute was again before the Maryland Court of Special Appeals following the decision in *Coy*. The Arizona Supreme Court noted that the *Craig* court reaffirmed the constitutionality of the Maryland statute, and then compared the two statutes:

"The *Craig* court stressed the 'high statutory threshold' that must be crossed to justify abridgment of a defendant's confrontation rights:

" '[O]rdinarily the judge should observe and question the child. Additionally, testimony about the likely impact on the particular child must be specific and must show much more than mere nervousness or excitement or some reluctance to testify. . . . While the testimony need not be given in the precise words of the statute, it must be clear that the statutory requirements are met in substance. . . . Testimony about the likely impact on the child testifying must be definite, related to the statutory standard, and specific to the potential child witness him or herself.'

"*Craig*, 76 Md. App. at [285], 544 A.2d at 801 (quoting *Wildermuth*, 310 Md. at 524, 530 A.2d at 289).

"Arizona's statute lacks the specificity of Maryland's. As we have indicated, it necessarily contemplates that the trial judge will exercise discretion in accordance with the state and federal constitutions; yet it leaves the limits of that discretion to be elucidated by the courts. Maryland's analysis of the *Ohio v. Roberts* criterion of unavailability assists us in supplying one basis for the proper exercise of such discretion.

"A central finding in *Wildermuth* and *Craig* was that the unavailability criterion would be satisfied by a well-grounded judicial determination that a child witness would be so traumatized by face-to-face confrontation as to be prevented from reasonably communicating. This court made a similar finding in a different context in *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987). There a five year old child had been sexually abused by the defendant. The trial court found the child 'unavailable' for testimony at trial. The child's out-of-court statements were admitted into evidence pursuant to A.R.S. § 13-1416, the 'Minor Sexual Victim Testimony Act.' We held that statute an unconstitutional infringement on the rule-making authority of the judiciary. However, we held that the statements were properly admitted pursuant to existing exceptions to the hearsay rule. The defendant argued that the admission of such testimony violated his

confrontation rights under the state and federal constitutions. We rejected that argument, finding under *Ohio v. Roberts* that the witness was unavailable and that her out-of-court statements bore adequate indicia of reliability. . . .

"We build on *Robinson* today in giving a partial answer to the question left open in *Coy*: whether any exceptions exist to the 'right to *meet face to face* all those who appear and give evidence *at trial*.' [487] U.S. at _____, 108 S. Ct. at 2803, 101 L. Ed. 2d at 867. An exception exists, we hold, under both the state and federal constitutions, where the state sustains its burden of proving by an individualized showing to the trial court that face-to-face testimony would so traumatize a child witness as to prevent the child from reasonably communicating. Like Maryland, we conclude that such a finding is 'tantamount to a finding of unavailability in the *Roberts* sense,' *Wildermuth*, 310 Md. at 519, 530 A.2d at 286, and would justify the substitution of the videotaped procedure established by A.R.S. § 13-4251. In so holding, we observe that § 13-4251 preserves all aspects of the defendant's confrontation rights except the right to receive accusatory testimony face-to-face. We also observe that the statute permits the trial court authority to assure that videotaping will occur in a neutral, courtroom-like atmosphere." *State v. Vincent*, 26 Ariz. Adv. Rep. at 40-41.

We find the reasoning of the Arizona Supreme Court persuasive. We are cognizant of the dilemma that this court, and the highest courts of our sister states, face in that we are bound by the decision in *Coy*, but we are not told what exceptions, if any, will be recognized by the United States Supreme Court. As Justice Scalia stated: "We leave for another day, however, the question whether any exceptions exist. Whatever they may be, they would surely be allowed only when necessary to further an important public policy." *Coy v. Iowa*, 101 L. Ed. 2d at 867. "Another day" has arrived for this court. We find ourselves basically in the same situation as the Arizona Supreme Court did in *Vincent*. Ariz. Rev. Stat. Ann. § 13-4251 *et seq.* (1988 Supp.), for constitutional purposes, is identical to K.S.A. 22-3434. Likewise, this court has followed *Ohio v. Roberts*, 448 U.S. 56, in holding out-of-court statements of a child victim do not violate the confrontation clause of either the Kansas or the United States Constitutions. We so held in *State v. Myatt*, 237 Kan. 17, 697 P.2d 836 (1985), as to out-of-court statements admitted pursuant to K.S.A. 60-460(dd), and in *State v. Johnson*, 240 Kan. 326, 729 P.2d 1169 (1986), *cert. denied* 481 U.S. 1071 (1987), where videotaped statements were admitted pursuant to K.S.A. 22-3433 and 22-3434.

While the Court's opinion in *Coy* indicated that any exception to the core right to confrontation required individualized findings that a particular witness required special protection, the

Court refused to indicate whether such exceptions were permissible. The Court left open the possibility that the core right to face-to-face confrontation was an absolute right not subject to exceptions. The concurring opinion authored by Justice O'Connor rejected such a view, finding that "our precedents recognize a right to face-to-face confrontation at trial, but have never viewed that right as absolute. I see no reason to do so now and would recognize exceptions here as we have elsewhere." 101 L. Ed. 2d at 869.

The Sixth Amendment right guaranteeing physical confrontation between the defendant and his accuser is an important right, but it is not an absolute right to be applied universally and without exception. Several of the decisions of the United States Supreme Court recognizing exceptions to the hearsay limitations contained in the confrontation clause are also necessarily exceptions to the right to physical confrontation. See *Ohio v. Roberts*, 448 U.S. 56. An exception to the confrontation clause which permits the introduction of the statements of an accuser made as an out-of-court statement inherently involves no less an exception to the right of the defendant to physical confrontation. As Justice O'Connor noted, an absolute application of a right to physical confrontation would prevent the use of any out-of-court statements when the witness is unavailable. See 101 L. Ed. 2d at 869 (citing *Bourjaily v. United States*, 483 U.S. 171, 97 L. Ed. 2d 144, 107 S. Ct. 2775 [1987]). See *Craig v. State*, 76 Md. App. 250.

As previously noted, both the opinion authored by Justice Scalia and the concurring opinion by Justice O'Connor indicate that face-to-face physical confrontation may be excused only where there is a case-specific finding of necessity. Such an exception must be "necessary to further an important public policy." 101 L. Ed. 2d at 867; *cf. Ohio v. Roberts*, 448 U.S. at 64. One such important public policy is the protection of child-victim witnesses from the trauma of "the harsh atmosphere" of a criminal trial. See, *e.g.*, 101 L. Ed. 2d at 868, 869 (O'Connor, J., concurring).

This important public policy was clearly articulated by the Maryland Court of Special Appeals in *Craig*:

"Implicit in this examination is the underlying conclusion that the State has a legitimate and compelling interest in authorizing this kind of procedure, but, to

the extent that conclusion was a tacit one in *Wildermuth,* we shall articulate it now. We conceive that the State has really a two-fold interest in allowing the testimony of a child abuse victim to be given *via* closed circuit television. Paramount, of course, is the fact that, if the child-victim is actually unable to testify otherwise—if he/she would be so 'traumatized' by a face-to-face confrontation as to be unable to 'reasonably communicate'—the truth of the matter might never be revealed, a terrible crime might go unredressed, and a dangerous person might be turned loose to continue his or her predation, perhaps (and, in some instances, likely) upon the same helpless victim. In addition, although somewhat related, the State has an interest in protecting children generally from trauma, especially trauma that would result from the deliberate action of the State itself. Keeping in mind the threshold requirement in § 9-102, what is to be gained from forcing a child-victim to testify in the direct presence of the defendant when the only product of it will be further suffering for the child rather than any meaningful evidence—*inculpatory or exculpatory?* We have no doubt that the procedure authorized by § 9-102 is one that is 'necessary to further an important public policy.' *Coy v. Iowa,* [487] U.S. at _____, 108 S. Ct. at 2803." *Craig v. State,* 76 Md. App. at 283.

In *State v. Kuone,* 243 Kan. 218, 757 P.2d 289 (1988), this court found that the psychological trauma or disability resulting from a sexual assault could, in certain cases, constitute unavailability as that term is used in K.S.A. 1988 Supp. 60-460(dd). We found that a determination of unavailability due to then-existing mental illness could be based upon a review of the following factors:

"(1) the probability of psychological injury as a result of testifying, (2) the degree of anticipated injury, (3) the expected duration of the injury, and (4) whether the expected psychological injury is substantially greater than the reaction of the average victim of a rape, kidnapping, or other violent act. Other factors may also be relevant." 243 Kan. 218, Syl. ¶ 2.

It would seem no less appropriate to utilize these factors, among others, in determining if a child victim is unavailable to testify, as required by the *Roberts* test, and thus justify the closed-circuit television procedure pursuant to K.S.A. 22-3434.

In *Vincent,* the Arizona Supreme Court, in reference to the finding that a child would be so traumatized by face-to-face testimony, said:

"Like Maryland, we conclude that such a finding is 'tantamount to a finding of unavailability in the *Roberts* sense,' *Wildermuth,* 310 Md. at 519, 530 A.2d at 286, and would justify the substitution of the videotaped procedure established by A.R.S. § 13-4251." *State v. Vincent,* 26 Ariz. Adv. Rep. at 41.

We hold that an exception exists to a defendant's right to confrontation where the State establishes by clear and convincing evidence that to require a child to testify in open court will so

traumatize the child as to prevent the child from reasonably communicating to the jury or render the child unavailable to testify. Such an individualized finding must be made by the trial court before the State is permitted to proceed under the provisions of K.S.A. 22-3434.

Having determined that it was error to permit the closed-circuit testimony of B.M., we must determine if the error was harmless. The State contends that, even if the use of closed-circuit testimony violated the defendant's right to confrontation, the error was harmless since "[t]here was sufficient evidence to convict [the defendant] without considering" the testimony of B.M. Such is not the test to determine if, in the present case, the error was harmless. Before error involving a federal constitutional right can be found harmless, we must be able to declare our belief that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, *reh. denied* 386 U.S. 987 (1967).

In the present case, it cannot be said beyond a reasonable doubt that the error was harmless. Underlying the decision of the United States Supreme Court in *Coy* was the impact of face-to-face confrontation upon the credibility of a witness. A physical confrontation of the witness and the defendant "may confound and undo the false accuser, or reveal the child coached by a malevolent adult." 101 L. Ed. 2d at 866. The prejudice or harmlessness of the trial court's error in the present case, therefore, cannot be determined solely by determining whether there was sufficient evidence from other witnesses to convict the defendant. Had the jury been accorded the opportunity to observe the confrontation of the alleged child victim and the defendant, it could have concluded that the accusation was false and required acquittal. In the present case, the testimony of the child-victim witness and her brother provided the only direct evidence in support of the indecent liberties charges. In considering the issue of harmless error, the question is not whether there might have been sufficient evidence upon which the accused could have been convicted without the improperly admitted evidence, but whether "there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 11 L. Ed. 2d 171, 84 S. Ct. 229 (1963). In the present case, where the

testimony of the alleged child-victim witness and her five-year-old brother provided the central thrust of the State's case against the defendant, it cannot be said that the trial court's error was harmless beyond a reasonable doubt.

As previously noted, the State cross-appealed on a question reserved. The question reserved was whether the trial court abused its discretion in refusing to allow expert testimony concerning the child sexual abuse accommodation syndrome as rebuttal evidence. We note, however, that counsel for the State indicated in her brief that the question reserved "may be properly addressed as a response to [defendant's] third issue," and the State abandoned its cross-appeal. Since our holding herein is dispositive of the appeal, we need not decide defendant's third issue nor consider the remaining issues raised by defendant.

The judgment of the district court is reversed and the case is remanded for further proceedings.