(778 P.2d 386)

No. 62,413

State of Kansas, *Appellee,* v. Donald A. Albert, *Appellant.*

Opinion filed August 25, 1989.

*Steven R. Zinn,* deputy appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Mike Ward,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before Rulon, P.J., Larson and Lewis, JJ.

Rulon, J.: This is a direct appeal by defendant Donald A. Albert from convictions, following a bench trial, of two counts of aggravated incest. K.S.A. 21-3603.

We affirm because we conclude that Albert's state and federal constitutional right to confront an adverse witness was not violated by the State's videotaped presentation of the testimony of one of the alleged victims pursuant to the provisions of K.S.A. 22-3434. Additionally, we conclude there was sufficient evidence of Albert's specific intent to commit aggravated incest.

## FACTUAL HISTORY

In September of 1982, Donald A. Albert married Martha Albert. Both had previously been married and had custody of their respective children. Martha was the mother of three young girls, C.H., M.O., and N.O., while Albert had one son. Martha frequently worked on weekends, and on those occasions, Albert took care of all the children.

C.H., who was 14 years old at the time of Albert's trial, testified that, shortly after Albert married her mother, he began to sex-

ually abuse C.H. She stated that the first incident occurred around Halloween of 1982, when Albert ordered her to fondle his penis while he watched a football game on a Saturday afternoon while her mother was at work. C.H. claimed that Albert also required her to engage in various forms of sexual conduct. In particular, C.H. claimed that, from the summer of 1985 until May 1986, such conduct occurred "almost every weekend." C.H. claimed that she once attempted to tell her mother of Albert's behavior, but that her mother refused to believe her. Finally, C.H. claimed that on one occasion she observed Albert engaging in oral sodomy with her younger sister, M.O.

At the end of the school year in 1986, C.H. left an anonymous note informing one of her seventh grade teachers that her step-father had been sexually abusing her. The teacher identified C.H. as the author of that note because of her familiarity with C.H.'s handwriting. She contacted the Department of Social and Rehabilitation Services (SRS) and arranged for C.H. to come to school for an interview with a police detective and a social worker. Subsequently, both C.H. and M.O. participated in counseling with Betty Skinner, a clinical social worker at the Counseling Center in Augusta.

An information was filed charging Albert with two counts of aggravated incest, with one count based upon his alleged conduct with C.H. and the other based upon his conduct with M.O. The State subsequently filed a motion requesting an order pursuant to K.S.A. 22-3434 authorizing the videotaping of the testimony of M.O., who was then 11 years old. On January 15, 1987, the court conducted a hearing on that motion. At that hearing, Skinner expressed her belief that M.O. would have difficulty if she were required to testify in court. She stated that M.O. had recently been diagnosed as having a severe ulcer and was still having trouble discussing the situation in counseling sessions, and that such problems would worsen if she were required to testify. Skinner further stated that M.O. cried whenever they discussed the possibility of her testifying in court.

On cross-examination, Skinner testified that M.O. would have difficulty in dealing with the formality of a courtroom proceeding, but that it would be even more difficult if she had to look at Albert while testifying. She testified that in her opinion M.O.

would be unable to cope with facing Albert until the case was resolved. Skinner further opined that M.O. could testify in a courtroom if Albert were not present.

Following Skinner's testimony, the State requested permission to present M.O.'s testimony by videotape due to the trauma M.O. would suffer if compelled to testify in court. Defense counsel objected to that motion, essentially contending that it violated Albert's constitutional right to face his accusers in open court. Defense counsel also argued that the procedure was prejudicial in a case where the credibility of the witnesses was the central issue, because it would be difficult for the trier of fact to determine credibility while viewing a videotape. At the conclusion of the hearing, the district court granted the State's motion upon a finding that K.S.A. 22-3434 was constitutional.

The videotaped testimony of M.O. was taken on April 15, 1987, at the South Central Mental Health Counseling Center in El Dorado. In that videotaped testimony, M.O. testified that Albert sexually abused her and described the various sexual acts which Albert required her to perform.

At the conclusion of the trial, Albert was found guilty of both counts and sentenced to concurrent terms of two to eight years on each count.

CONFRONTATION

Albert claims the introduction of the videotaped testimony of M.O., pursuant to the provisions of K.S.A. 22-3434, denied him the right to confront the witnesses against him as secured by the Sixth Amendment to the United States Constitution and Section 10 of the Bill of Rights of the Kansas Constitution, and requires the reversal of both counts of his conviction because M.O.'s videotaped testimony included allegations regarding Albert's alleged conduct with the other victim, C.H., and because the introduction of the videotaped testimony was inherently prejudicial. We disagree.

K.S.A. 22-3434 empowers a trial court, after a motion by the State, to allow the testimony of a victim of a crime who is less than thirteen years old to testify by way of closed-circuit video equipment or videotape. Further, it allows the victim to testify in an environment in which he or she can neither see nor hear the defendant, although the defendant has the right to be able to see and hear the victim. K.S.A. 22-3434(b)(4). If the testimony is then

taken by such method, the child can not be required to testify in person at trial. K.S.A. 22-3434(c).

Prior to its recent decision in *State v. Chisholm*, 245 Kan. 145, 777 P.2d 753 (1989), the Kansas Supreme Court had previously upheld K.S.A. 22-3434 in the face of claims that it violated the confrontation clause. *State v. Chisholm*, 243 Kan. 270, 755 P.2d 547 (1988); *State v. Johnson*, 240 Kan. 326, 729 P.2d 1169 (1986), *cert. denied* 481 U.S. 1071 (1987). However, shortly after *State v. Chisholm*, 243 Kan. 270, was decided, the United States Supreme Court found unconstitutional, on confrontation clause grounds, an Iowa statutory procedure which permitted the placement of a screen between the defendant and the complaining witnesses at trial so that the witnesses could not see the defendant. *Coy v. Iowa*, 487 U.S. _____, 101 L. Ed. 2d 857, 108 S. Ct. 2798 (1988). The United States Supreme Court then vacated and remanded *Chisholm*, 243 Kan. 270, for further consideration in light of *Coy*. *Chisholm v. Kansas*, _____ U.S. _____, 102 L. Ed. 2d 523, 109 S. Ct. 486 (1988).

In *Coy*, the defendant was convicted of "lascivious acts with a child." 101 L. Ed. 2d at 862. The victims, two thirteen-year-old girls, testified at trial with a large screen blocking their view of the defendant. 101 L. Ed. 2d at 862. The defendant was able to "dimly perceive the witnesses" from behind the screen. 101 L. Ed. 2d at 863. Emphasizing the importance of the physical face-to-face confrontation under the right of confrontation, the United States Supreme Court reversed the conviction. 101 L. Ed. 2d at 863-67. The Court left open the possibility that there are exceptions to the right to a face-to-face confrontation, noting that any such exception would require specific findings of necessity based upon an important public policy. 101 L. Ed. 2d at 867. Because no such findings were made by the trial court in *Coy*, the Court reversed the conviction. 101 L. Ed. 2d at 867.

Although Albert argues that under *Coy*, 22-3434 is unconstitutional, the Kansas Supreme Court has repeatedly upheld the constitutionality of 22-3434 after expressly considering the impact of *Coy*. In *State v. Eaton*, 244 Kan. 370, 377-79, 769 P.2d 1157 (1989), the defendant was convicted of indecent liberties with a child and aggravated criminal sodomy after a jury trial in which the alleged victim, a seven- year-old girl, testified via closed-circuit television. 244 Kan. at 371-75.

The *Eaton* court found that, although *Coy* had not decided the matter, the right to a face-to-face confrontation is not absolute and admits of exception. Further, the court found that, although 22-3434 does not require a specific finding that public policy justifies non-confrontational testimony, such a requirement may be read into the statute to carry out the legislative intent that it be constitutional. 244 Kan. at 379. Thus, the court expressly added the following requirements to 22-3434:

"We hold that an exception exists to a defendant's right to confrontation where the State establishes by clear and convincing evidence that to require a child to testify in open court will so traumatize the child as to prevent the child from reasonably communicating to the jury or render the child unavailable to testify. Such an individualized finding must be made by the trial court before the State is permitted to proceed under the provisions of K.S.A. 22-3434." 244 Kan. at 384-85.

In *State v. Chisholm* 245 Kan. 145, our Supreme Court again upheld K.S.A. 22-3434 against a challenge that the statute violated the constitutional right to confront witnesses. The *Chisholm* court concluded:

"The fundamental right of a defendant to confront a witness in a criminal trial is not absolute and has exceptions where necessary to further an important public policy." Syl. ¶ 2.

"A defendant in a sexual abuse trial is not denied his constitutional right of confrontation where the child-victim witness testifies via closed-circuit television, pursuant to K.S.A. 22-3434, provided the trial court makes an individualized finding that the child-victim witness would suffer trauma as a result of giving in-court, face-to-face testimony." Syl. ¶ 4.

The trial court in this case made an individualized finding supported by clear and convincing evidence which meets the exception adopted in *Eaton* and *Chisholm*. At the time of the hearing on the motion to videotape, Betty Skinner had been working with M.O. for six months. Skinner testified that, in her opinion, M.O. would have difficulty testifying in court. She stated that at every session in which M.O. discussed testifying in court she "cries, [and] is very uncomfortable. At first she tries to be very strong and starts smiling inappropriately, becomes giddy, and then she becomes—begins to sob." Further, Skinner noted that M.O. has had a serious ulcer and the stress of testifying in court would aggravate her condition. Thus, in her opinion, M.O. would be unable to testify in front of Albert in any degree of detail.

The district court stated at the hearing on the motion to permit

videotaping that it believed K.S.A. 22-3434 to be constitutional. Further, the court believed Skinner's testimony, finding "I'm very reluctant to bring in a young child just - just to watch and see if she's [going to] freeze and fall apart on the stand" and "I have confidence in the ability and expertise of the mental health center to be able to make that judgment." Although the district court's individualized findings were not stated in the precise language of the *Eaton* and *Chisholm* exception, we are convinced the *Eaton* and *Chisholm* requirements were met in substance. The district court believed M.O. would be unable to communicate in a formal trial while facing Albert, therefore, being unavailable for in-court testimony. We are completely satisfied this finding was supported by clear and convincing evidence.

## SPECIFIC INTENT

Albert further argues that there was insufficient evidence to convict him because there was no evidence of his specific intent. Aggravated incest requires the State to prove the defendant either married or engaged in specified sexual conduct with a person under eighteen whom the defendant knew to be of sufficient familial relation. K.S.A. 21-3603. One specified type of sexual conduct is "any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender or both." K.S.A. 21-3603(2)(b). Thus, aggravated incest requires specific intent if, as in the present case, it is based on lewd fondling or touching with the intent to arouse the sexual desires of either party. See *State v. Wells*, 223 Kan. 94, 98, 573 P.2d 580 (1977).

Here, there is evidence to support findings about Albert's specific intent. Both victims testified about sexual acts Albert forced them to perform. A fact finder may infer the defendant's specific intent from the totality of the circumstances and the defendant's actions. See *State v. Harper*, 235 Kan. 825, 828-31, 685 P.2d 850 (1984) (specific intent to commit a felony or a theft in a burglary case may be gleaned from the totality of the circumstances, including time of day and manner of entry). Similarly, a fact finder may infer a specific intent from Albert's blatantly sexual acts.

Finally, we have considered the other issues raised by Albert

and conclude that K.S.A. 22-3434 was not unconstitutionally applied so as to inherently prejudice Albert.

Affirmed.