No. 62,717

STATE OF KANSAS, *Appellee*, v. JAMES L. SIARD, JR., *Appellant*.

(783 P.2d 895)

Opinion filed December 8, 1989.

*Gerald R. Kuckelman*, of Larry R. Mears, Chartered, of Atchison, argued the cause and was on the brief for appellant.

*Alan M. Boeh*, special prosecutor, of Troy, argued the cause and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: James L. Siard, Jr., appeals his convictions by a jury of two counts of indecent liberties with a child (K.S.A. 21-3503) and two counts of aggravated incest (K.S.A. 21-3603). The issues raised on appeal involve an alleged denial of the defendant's Sixth Amendment right of confrontation and that the charges of indecent liberties with a child were multiplicitous with those of aggravated incest. The Court of Appeals affirmed the convictions in an unpublished opinion. (*State v. Siard*, No. 62,717, filed May 19, 1989.) We reverse the convictions.

Defendant's convictions were based upon acts of alleged sexual intercourse between him and his two daughters, S.S. (born December 26, 1971) and D.S. (born November 26, 1972). The acts took place at defendant's home in Doniphan, Kansas. The complaint alleged the incidents with S.S. occurred between January 1986 and April 30, 1987, and those with D.S. occurred between January 1987 and March 1987.

S.S. and D.S. and their two sisters, J.S. (age 11) and K.S. (age 9), live with their mother and stepfather. Pursuant to the divorce decree between defendant and the children's mother, the defendant had the girls every other weekend during the school year and for several weeks during the summer. The acts with which the defendant was charged took place during weekend visitations while the defendant's wife, Becky, was at work. S.S. testified that her father began having sexual intercourse with her about January 1986 and that it continued until May 1987. She estimated they had intercourse approximately 20 times during that period.

D.S. testified that the defendant had intercourse with her about ten times from January through March 1987. K.S., defendant's nine-year-old daughter, testified that on one occasion she walked into the bedroom and saw "Dad on top of [S.S.]."

The defendant denied committing any of the alleged acts. His testimony was corroborated to some extent by his wife, mother, and sister-in-law. The jury convicted the defendant of one act of indecent liberties with a child and one count of incest involving S.S., and with one count each of the same two crimes involving D.S. Additional facts will be stated as they relate to the issues on appeal.

The first two issues assert error based upon the trial court's decision to arrange the counsel tables during trial to effectively create a sight barrier between the defendant and his daughters when they were on the witness stand. Based primarily on the recent decisions in *Coy v. Iowa*, 487 U.S. 1012, 101 L. Ed. 2d 857, 108 S. Ct. 2798 (1988); *State v. Chisholm*, 245 Kan. 145, 777 P.2d 753 (1989); and *State v. Eaton*, 244 Kan. 370, 769 P.2d 1157 (1989); defendant asserts that his Sixth Amendment right to confrontation of the witnesses against him was violated.

On December 9, 1987, the trial court held a pretrial conference to consider pretrial motions and other procedural matters relative to the anticipated trial. During the discussions, the trial court asked: "Is there a problem or is anybody going to request some sort of barrier between the children when they testify and the defendant?" The judge then explained that he had in mind some sort of a sight barrier. The prosecutor responded that, if the court would grant a request for a barrier, he would ask for it. Defense counsel objected, raising the issue of the defendant's right to

confront the witnesses. Apparently the children had testified at the preliminary hearing without any problems other than the prosecutor's observation that it was "an uncomfortable thing." The judge responded that he might order a sight barrier, sua sponte, and voiced his opinion that it would not be a violation of the defendant's constitutional rights. Nothing further on the use of a barrier was said at that time.

On December 14, 1987, immediately before the start of trial, another pretrial conference was held in which voir dire and other procedural matters were discussed. At that meeting, the court announced that defendant was to sit at the north end of the counsel table and the table would be so located in the courtroom that the judge's bench would effectively screen the witnesses from any view of the defendant while they were on the witness stand. Defense counsel was instructed that during the testimony of defendant's daughters, he was to keep the defendant in a position at the counsel table where the defendant could not see the witnesses and they could not see him. The court then gave further instructions to counsel in order to shield the girls from their father during recesses, entering and leaving the courtroom, etc. The courtroom was arranged as the judge ordered, and the case proceeded to trial later that day.

During trial, the defendant occupied his designated seat at the counsel table and was effectively blocked from seeing his daughters as they testified. Likewise, the witnesses could not see the defendant. However, after cross-examination and rebuttal questioning of S.S. and D.S., the prosecutor asked each witness to step down from the witness chair and point out the defendant as being the person who molested them. That was the only face-to-face confrontation between the defendant and his daughters during their testimony.

The Court of Appeals, based upon *Coy*, found that defendant's Sixth Amendment right to confrontation had been violated but found the violation to be harmless error. It should be pointed out that the motives of the trial judge, in ordering the sight barrier and in seeking to protect the children during their testimony, are not questioned. In fact, defense counsel stated that he understood why the court was following such a procedure. It must also be emphasized that at the time of this trial, the United

States Supreme Court had not issued its opinion in *Coy*, and the trial court did not have the benefit of that decision.

In *Coy*, the defendant was charged with sexually assaulting two 13-year-old girls. At his jury trial, the court granted the State's motion, pursuant to a 1985 Iowa statute enacted to protect child victims of sexual abuse, to place a screen between defendant and the girls during their testimony. The screen blocked him from their sight but allowed him to see them dimly and to hear them. The court rejected defendant's argument that this procedure violated the confrontation clause of the Sixth Amendment, which gives a defendant the right "to be confronted with the witnesses against him." Defendant was convicted of two counts of lascivious acts with a child, and the Iowa Supreme Court affirmed. The United States Supreme Court granted *certiorari* and, in a plurality opinion, held Coy's Sixth Amendment right to confront the witnesses against him had been violated.

Since the decision in *Coy*, this court has had occasion in *Chisholm* and *Eaton* to consider the lessons of *Coy* in cases where the child-victim witness was shielded from in-court testimony by the use of closed-circuit television, pursuant to K.S.A. 22-3434. *Eaton* discussed *Coy* at length, and *Chisholm* also devoted considerable attention to *Coy*. We see nothing to be gained by further reviewing the decision in *Coy*. Suffice it to say, in *Coy* the Supreme Court found that the confrontation clause of the Sixth Amendment guarantees the defendant the right to a face-to-face confrontation with the witnesses against him during trial. The *Coy* court did recognize that there may be occasions when an important public policy requires exceptions to the general rule. The court also recognized that, before any such exception could be valid, it must be supported by specific, individualized findings that the particular witness needed special protection.

*Eaton* and *Chisholm* involved the shielding of a child victim in a sexual abuse trial. In both cases the child victim was allowed to testify by closed-circuit television pursuant to K.S.A. 22-3434. In *Eaton*, 244 Kan. 370, we held:

"The right to confrontation of a witness under the Kansas and United States Constitutions includes the right of the accused to face-to-face confrontation while a victim/accuser is testifying against the accused." Syl. ¶ 1.

"The fundamental right of a defendant to confront a witness in a criminal trial is not absolute and has exceptions where necessary to further an important public policy." Syl. ¶ 2.

"A defendant in a sexual abuse trial is not denied his constitutional right to confrontation where the child-victim witness testifies via closed-circuit television, pursuant to K.S.A. 22-3434, provided the trial court finds that in-court, face-to-face testimony by the child-victim witness would so traumatize the child as to prevent the child from reasonably communicating or would render the child unavailable to testify, as more specifically stated in the opinion." Syl. ¶ 4.

"The State has the burden of proving by clear and convincing evidence that the child-victim witness would be so traumatized and thus unavailable to testify." Syl. ¶ 5.

In *Chisholm*, we reaffirmed that before a defendant may be deprived of a face-to-face confrontation of the victim at trial the State must show an important public policy consideration for doing so. Before such an exception will be allowed, the trial court must make "an individualized finding that the child-victim witness would suffer trauma as a result of giving in-court, face-to-face testimony." 245 Kan. 145, Syl. ¶ 4. The court also held:

"The State has the burden of proving by clear and convincing evidence that a child-victim witness would suffer psychological harm as a result of a face-to-face confrontation with the accused. Should the State sustain this burden of proof, protection of the child from such trauma, as an important public policy, outweighs the accused's right of face-to-face confrontation with the child." Syl. ¶ 5.

In the present case the court gave no reason for its decision to establish a sight barrier between the children and their father during trial. In fact, the record reflects that the children testified at the preliminary hearing without any barriers and suffered no apparent difficulties. The two victims in this case were not children of tender years. At trial S.S. was just a few days under 16 years of age, and D.S. was 15 years old. Even under the public policy embodied in K.S.A. 22-3433 and 22-3434 for the protection of child victims of crime, the victims here would not qualify for protection. The statutes require the victim witness to be under the age of 13. The record reflects no basis for any necessity to provide a sight barrier which effectively denied the defendant his Sixth Amendment right of confrontation. Without some specific individualized findings of necessity by the trial court, and in view of the decisions in *Coy, Eaton,* and *Chisholm,* it appears clear

that the defendant's rights were violated and that the trial court erred. We recognize that the procedure utilized here was not as intrusive or obvious as that in *Coy* or as those contemplated by our statutes. However, the ultimate effect of denying the defendant confrontation with the witnesses was the same.

The State contends that any error was harmless. This court has often stated the following rule when addressing constitutional errors. "[A] court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such a belief beyond a reasonable doubt." *State v. Garcia*, 233 Kan. 589, 596, 664 P.2d 1343 (1983). In *Eaton*, the court recognized that rule and stated further:

> "The prejudice or harmlessness of the trial court's error in the present case, therefore, cannot be determined solely by determining whether there was sufficient evidence from other witnesses to convict the defendant. Had the jury been accorded the opportunity to observe the confrontation of the alleged child victim and the defendant, it could have concluded that the accusation was false and required acquittal. . . . In considering the issue of harmless error, the question is not whether there might have been sufficient evidence upon which the accused could have been convicted without the improperly admitted evidence, but whether 'there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 11 L. Ed. 2d 171, 84 S. Ct. 229 (1963)." 244 Kan. at 385.

Applying these rules, the court held that it could not conclude the error was harmless beyond a reasonable doubt, because the child-victim's testimony and her younger brother's corroborating testimony was the "central thrust of the State's case." 244 Kan. at 385-86.

The same is true in the present case. The State's case was built around the testimony of the two victims, S.S. and D.S., and that of their younger sister K.S. While it is true that there were other witnesses, the bulk of their testimony was based upon what they had been told by the victims and K.S. The only medical testimony was inconclusive. The Court of Appeals found the present error was harmless based upon the consistency of the children's testimony with that given at the preliminary hearing. We do not agree. Based upon this record, we cannot conclude that the error was harmless beyond a reasonable doubt.

In view of our determination, there is no necessity to address the defendant's contention that the use of the sight barrier denied him his Fourteenth Amendment due process right to a fair trial.

The defendant's final contention is that he was convicted of multiplicitous offenses. In addressing this issue the Court of Appeals stated:

"The defendant also contends he was convicted of both indecent liberties and aggravated incest arising out of the same act. Because, pursuant to K.S.A. 21-3107, a defendant may be convicted of the crime charged or an included crime but not both, defendant argues he should be sentenced only on the lesser crime of aggravated incest.

"Multiplicity is defined as 'the charging of a single offense in several counts of a complaint or information.' *State v. Frazier*, 12 Kan. App. 2d 164, 167, 736 P.2d 956 (1987). Charges are not multiplicitous if each charge requires proof of a fact not required in proving the other. Offenses charged are also not multiplicitous when they occur at different times and different places, because they cannot be said to arise out of a single wrongful act. *State v. Howard*, 243 Kan. 699, 703, 763 P.2d 607 (1988); *State v. Garnes*, 229 Kan. 368, 372, 624 P.2d 448 (1981).

"In *State v. Dorsey*, 224 Kan. 152, 578 P.2d 261 (1978), the court held that three acts of attempted rape and two acts of oral sodomy carried out over the course of an hour with a lapse of only minutes between incidents constituted only one wrongful act for purposes of multiplicity. In *State v. Wood*, 235 Kan. 915, 920, 686 P.2d 128 (1984), the court found the incidents distinct when two or three hours separated acts of rape occurring in different rooms. In *Howard*, '[t]he acts took place over a time span of one and a half to three hours and were separate and distinct, occurring at different times in different locations in the house and separated from each other by other sexual acts.' 243 Kan. at 703. The court found the acts clearly separate and not multiplicitous.

"In the present case, one daughter testified her father had sexual intercourse with her on the girls' alternate weekend visits from January 1986 until May 1987. She estimated approximately twenty separate acts of sexual abuse. The other daughter was sexually abused approximately ten separate times during visits from Christmas 1986 until May 1987. Each daughter specifically testified about an incident involving both girls together, as well as individual incidents. The defendant was charged with one count of aggravated incest involving each child and one count of taking indecent liberties with a child involving each child. There was sufficient evidence to charge and convict him of approximately thirty separate counts. The charges in this case were based on separate and distinct acts, not the same act or occurrence, and are not multiplicitous. Furthermore, each charge required proof of a fact not required in proving the other, and the charges are not lesser offenses. *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988)."

We agree with the analysis of the Court of Appeals. However, as this case must be tried again, we suggest that it might be advisable for the trial court to make it clear in the instructions that the charges of aggravated incest and indecent liberties with a child cannot both be based upon the same sexual act.

The judgment of the Court of Appeals is reversed. The judgment of the district court is reversed, and the case is remanded with directions to grant the defendant a new trial.

SIX, J., not participating.

MCFARLAND and HERD, JJ., dissenting.