The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Daniel W. DIEFENDERFER, Defendant–Appellant.

No. 87SA355.

Supreme Court of Colorado, En Banc.

Dec. 4, 1989.

Rehearings Denied Jan. 16, 1990.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Curt P. Kriksciun and Wendy J. Ritz, Asst. Attys. Gen., Appellate Section, Denver, for plaintiff-appellee.

Fredric B. Butler, Eagle, for defendant-appellant.

Justice MULLARKEY delivered the Opinion of the Court.

This is an appeal of a conviction for sexual assault upon a child and aggravated incest originally taken from the District Court of Eagle County to the Colorado Court of Appeals. Because the defendant raised certain constitutional questions, the court of appeals submitted the case to this court for a determination of jurisdiction pursuant to section 13–4–110, 6A C.R.S. (1987). We accepted jurisdiction and now affirm the judgment of the district court.

## I.

### A.

Daniel Wayne Diefenderfer was charged with sexual assault upon a child, section 18–3–405, 8B C.R.S. (1986), and aggravated incest, section 18–6–302(1)(a), 8B C.R.S. (1986). The charges were based on an incident alleged to have occurred in August of 1985 involving Diefenderfer and his three-year-old stepdaughter M.W. The investigation began after M.W. allegedly stated to her eighteen-year-old babysitter Lenna Curtis that "Dan—Dad—put his—made her sit on his lap and put his thing, wiener, through her legs." After Curtis reported M.W.'s statements to the Department of Social Services, an investigation followed.

Curtis testified at trial that she believed that M.W. made the statements to her sometime in the "mid-Summer" of 1985. Other evidence produced at trial indicated that M.W.'s statement was made to Curtis sometime in August of 1985. At the time the alleged incident occurred, M.W. was living with defendant Dan Diefenderfer and his wife Brenda, the natural mother of the child M.W. Brenda Diefenderfer had custody of M.W. pursuant to a custody order and dissolution decree entered in February 1985, dissolving the marriage between Brenda Diefenderfer and her husband Justin.[1]

In late August of 1985, following the report by Lenna Curtis of the potential sexual abuse of M.W., the Department of Social Services contacted the Diefenderfers and asked them to bring in M.W. and her brother R.W. for an interview. Present at the interview was Gerald Sandberg, an investigator for the Eagle County District Attorney's office. Sandberg, together with a Social Services caseworker, interviewed M.W. in private making use of anatomically correct dolls. M.W. indicated through the use of the dolls that "Dad" had put her on his lap with his penis between her legs. According to the testimony of Sandberg, she stated that "he put it inside me, and it hurt, and I cried." Following the interview with M.W., Sandberg interviewed Diefenderfer and indicated that there "had been some allegations" without revealing the exact nature of those allegations. Without receiving further prompting from Sandberg as to the nature of the allegations against him, Diefenderfer volunteered that "they were very open in their household" and that he and Brenda "played with each other on the couch in their home." He further indicated that "Brenda and he

---

1. We omit the last name of M.W.'s natural father, Justin, in order to protect the identity of M.W.

would have sex on the couch in their trailer" and that "[M.W.] had fallen down and hurt herself and bruised her vaginal area."

It appears from the record that shortly after the Diefenderfers' interview with the Social Services caseworker and Sandberg, Brenda Diefenderfer arranged for M.W. to stay with Brenda's parents in Nebraska. During that time, at the request of the defendant's attorney, the grandparents took M.W. to a psychiatrist, Dr. Robert C. Calkins of Scottsbluff, Nebraska, for evaluation. M.W. stayed with her maternal grandparents until about October 20, 1985, at which time she returned home and stayed with her mother and the defendant for approximately two weeks. Subsequently, the Diefenderfers arranged for M.W. to stay with the defendant's parents in Wyoming. Although it is unclear from the record, apparently M.W. remained with Dan Diefenderfer's parents until custody of her was given to the Department of Social Services by order of the court on March 13, 1986.

On February 12, 1986, pursuant to a court order, M.W. was examined by Dr. Susan VanScoyk, a child psychiatrist at the Kempe Center, a national center for studies and research on child abuse and neglect in Denver. During the course of the interview by VanScoyk, M.W. made statements indicating that Diefenderfer had put his penis between her legs. These statements were subsequently admitted at trial through the testimony of VanScoyk pursuant to the statutory hearsay exception of section 13–25–129, 6A C.R.S. (1987), which permits the admission of certain statements made by children who have been victims of sexual abuse.

In June of 1986, the defendant became aware that Calkins, the Nebraska psychiatrist who had examined M.W. in September of 1985, would be unable or unwilling to appear at trial. In a series of letters to the district attorney as well as in a formal motion to the court dated September 8, 1986, the defendant requested that the prosecution produce M.W. and her brother R.W. for examination by another defendant expert, psychologist Dr. Lenore Walker of Denver. The court denied the request for further access stating that it was "not going to have this child put through it again."

At trial, M.W. did not testify. Instead, her hearsay statements regarding the actions of the defendant were admitted through the testimony of Sandberg, VanScoyk, and Lenna Curtis. Also, the court admitted testimony from Audrey Curtis, the mother of Lenna Curtis, confirming the content of M.W.'s statements to Lenna as reported by her to Audrey on the day of the babysitting. The court admitted the testimony of Lenna Curtis under C.R.E. 803(2) (excited utterance). M.W.'s statements to Sandberg were admitted under C.R.E. 803(24) (the residuary exception to the hearsay rule), and, as stated above, M.W.'s statements to VanScoyk were admitted under the statutory hearsay exception, section 13–25–129. It is unclear on what basis Lenna Curtis's hearsay statements to her mother were admitted.

Diefenderfer called several lay witnesses to testify on his behalf. He called Joy Stafford, the mother of his wife Brenda. He also called Marta Hulse, a neighbor who occasionally babysat M.W. He called his wife Brenda, and his father Robert Diefenderfer. Two experts, Walker and Dr. Richard Truchses, a clinical psychologist, also testified on behalf of Diefenderfer.

B.

The defendant alleges a number of errors. First, the defendant argues that the admission of M.W.'s hearsay statements made to VanScoyk and Sandberg was error. Further, the defendant challenges section 13–25–129 and C.R.E. 803(24) as being unconstitutionally vague, and as violating his right to confrontation. The defendant also claims that section 13–25–129 infringes upon this court's rulemaking authority. Second, the defendant claims that it was error for the trial court to deny his motion to allow his expert Lenore Walker to examine M.W. Third, the defendant asserts that the trial court erred in restricting his cross-examination of People's psychiatric expert. Fourth, the defendant claims the trial court erred in failing to

declare a mistrial because of juror and prosecutorial misconduct. Fifth, the defendant claims that there was insufficient evidence to sustain the verdicts on both counts. We examine each of these claims in turn.[2]

## II.

### M.W.'s Hearsay Statements

The defendant asserts that testimony by VanScoyk and Sandberg regarding M.W.'s hearsay statements was improperly admitted. Further, the defendant urges that section 13–25–129 as well as C.R.E. 803(24) are unconstitutionally vague and violate his right to confrontation.

### A. M.W.'s Statements to VanScoyk

First of all, our review of the record leads us to conclude that Diefenderfer did not object to the admission of M.W.'s hearsay statements made to VanScoyk.[3] During the preliminary hearing to determine the admissibility of these statements, we find that the defendant conceded that M.W.'s statements to VanScoyk were properly admissible under the statute. However, because the record is admittedly ambiguous on this point, and because the trial court formally ruled that these statements were admissible under the statute, we will consider whether these statements were properly admitted under section 13–25–129, 6A C.R.S. (1987).

Section 13–25–129 permits the admission of certain out-of-court statements made by a child describing acts of sexual conduct provided that the safeguards in the statute are followed.[4] The defendant argues that section 13–25–129(1), as applied in this case,

2. We do not address the admissibility of the hearsay statements made to Lenna and Audrey Curtis because the defendant has presented no argument or authorities supporting his bare objection to the admission of such evidence.

3. The following exchange occurred between Mr. Butler, Diefenderfer's attorney, Mr. Schulke, the prosecutor, and the court:

MR. BUTLER: Judge, in order to save some time, perhaps I could at least concede one point.
THE COURT: All right. Which is?
MR. BUTLER: As far as the statements to the child—or to the doctor are concerned, I think that has been my point all along that the provisions of the statute are intended to bring that kind of hearsay in.
And I think her testimony was that this—the Sandberg testimony and the Curtis testimony as to what [M.W.] told them basically corroborate what she would testify to as to hearsay, and I think this statute—and even Rule 803 sub 24—indicates that as long as this hearsay testimony is corroborated by other testimony, then I guess it has an element of reliability.
We would certainly admit that her statements to Dr. VanScoyk have a lot more reliability than to a related in-law baby sitter, and also to an investigator who was at the hearing, or an interview when Lori Lewis indicated that he took it out of context.
So I think it would be our position that the statements of a—the child to these other two people would be only corroborative of VanScoyk, and, therefore, statements as to what the child said would be more reliable, and then in, under this statute.

I think he did have another ancillary part of his motion, and that's one of videotapes. And I think the—and I don't remember which motion in limine that was—but we would, of course, object to the videotapes, if that's part of her testimony.
MR. SCHULKE: We're not planning on showing the videotapes.
MR. BUTLER: I'll drop that. In order to save some time, we would certainly object to Sandberg and Curtis testifying as to what the child told them. Now, VanScoyk can always allude, apparently, to their statements in her testimony, because it does, apparently, corroborate what she's going to say. But I think her testimony does not necessarily corroborate what the child tells them.
If they were allowed to have Sandberg in and Lenna Curtis in, then the defendants would have a like right to call Bob Diefenderfer and have him testify as to what the child told him, and also Joy Stafford, the grandmother, people like that.
THE COURT: You've endorsed these people, have you not?
MR. BUTLER: Yes, I have. Mainly as a possible rebuttal to what I anticipate might be tried by the district attorney as far as his hearsay. I think that as far as all of the experts that everybody has endorsed, these statements of the child would be under this statute.

4. Section 13–25–129 provides:
**Statements of child victim of unlawful sexual offense against a child or of child abuse—hearsay exception.** (1) An out-of-court statement made by a child, as child is defined under the statutes which are the subject of the action, describing any act of sexual contact,

violated his constitutional right of confrontation. In *People v. District Court*, 776 P.2d 1083 (Colo.1989), we upheld this statute in the face of a confrontation clause challenge. Nevertheless, we will consider whether, as applied in this case, the statutory hearsay exception violated the defendant's constitutional rights.

In the past, when we have been faced with a confrontation clause challenge to hearsay evidence such as that present in this case, we have employed a two-step analysis. *See Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980); *People v. District Court*, 776 P.2d 1083 (Colo.1989); *People v. Dement*, 661 P.2d 675, 680 (Colo.1983). First, it must be determined whether the proponent of the hearsay either produced the hearsay declarant for cross-examination or demonstrated that the declarant was unavailable. *Ohio v. Roberts*, 448 U.S. at 65, 100 S.Ct. at 2538–39. Second, if as in this case, the declarant is determined to be unavailable, then we must examine whether the hearsay bears "sufficient indicia of reliability" precluding the need for cross-examination. *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2539; *People v. Dement*, 661 P.2d at 681.

■ There is some question as to whether the two-step analysis of *Ohio v. Roberts* continues to govern confrontation clause challenges to the use of hearsay evidence. *See United States v. Inadi*, 475 U.S. 387, 401, 106 S.Ct. 1121, 1129, 89 L.Ed.2d 390 (1986) (showing of unavailability not constitutionally mandated to admit statements of a coconspirator); *Bourjaily v. United States*, 483 U.S. 171, 184, 107 S.Ct. 2775, 2783, 97 L.Ed.2d 144 (1987) (showing of independent indicia of reliability not mandated by constitution prior to admission of coconspirator's statements). Despite certain broad language in these two cases, we believe that the *Ohio v. Roberts* two-part analysis is still applicable when considering exceptions to the hearsay rule which are nontraditional, i.e., exceptions which are not "firmly rooted" in the law of hearsay. *Accord, Glendening v. State*, 536 So.2d 212, 219–20 (Fla.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989) (court applies *Ohio v. Roberts* test in considering admission of hearsay and videotape child sexual abuse testimony); *State v. Eaton*, 244 Kan. 370, 384–85, 769 P.2d 1157, 1167–68 (1989) (court applies *Ohio v. Roberts* two-part test to consider whether state properly used closed circuit television testimony of child sexual abuse victim); *Wildermuth v. State*, 310 Md. 496, 515–17, 530 A.2d 275, 285 (1987) (court applies *Ohio v. Roberts* test in upholding statute allowing closed circuit television

intrusion, or penetration, as defined in section 18–3–401, C.R.S., performed with, by, on, or in the presence of the child declarant, not otherwise admissible by a statute or court rule which provides an exception to the objection of hearsay, is admissible in evidence in any criminal, delinquency, or civil proceedings in which a child is a victim of an unlawful sexual offense, as defined in section 18–3–411(1), C.R.S., or in which a child is the subject of a proceeding alleging that a child is neglected or dependent under section 19–1–104(1)(b), C.R.S., and an out-of-court statement by a child, as child is defined under the statutes which are the subject of the action, describing any act of child abuse, as defined in section 18–6–401, C.R.S., to which the child declarant was subjected or which the child declarant witnessed, not otherwise admissible by a statute or court rule which provides an exception to the objection of hearsay, is admissible in evidence in any criminal, delinquency, or civil proceedings in which a child is a victim of child abuse or the subject of a proceeding alleging that a child is neglected

or dependent under section 19–1–104(1)(b), C.R.S., if:

(a) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(b) The child either:

(I) Testifies at the proceedings; or

(II) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

(2) If a statement is admitted pursuant to this section, the court shall instruct the jury that it is for the jury to determine the weight and credit to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

(3) The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement.

testimony of child victims of sexual abuse). *See also Nelson v. Farrey*, 874 F.2d 1222, 1231 (7th Cir.1989) (Flaum, J., concurring, argues that *Inadi* does not repudiate *Ohio v. Roberts* test in all cases). *But see State v. Gallagher*, 150 Vt. 341, 347–48, 554 A.2d 221, 225 (1988) (court found that *Inadi* repudiated *Roberts* requirement that declarant be unavailable; thus unavailability does not apply to admission of hearsay statements of child victims of sexual crimes). *Accord Johnson v. State*, 292 Ark. 632, 643–44, 732 S.W.2d 817, 823 (1987).

We note here that section 13–25–129 is in many ways *more* protective than the standard enunciated in *Ohio v. Roberts*. First, unlike the *Ohio v. Roberts* test, it requires a showing of "sufficient safeguards of reliability"[5] whether or not the declarant is unavailable. Second, if the declarant is unavailable it requires corroborative evidence of the act which is the subject of the statement. We conclude, therefore, that statements meeting this statutory standard also fulfill the requirements of *Ohio v. Roberts*. We next will consider whether M.W.'s statements to VanScoyk were properly admitted under the statute.

### 1. *Sufficient Safeguards of Reliability*

The defendant disputes whether the court made the required determination based on a hearing that the content and circumstances of the statement provide sufficient safeguards of reliability. Our review of the record indicates that the court did make an adequate finding of reliability. The court stated that:

> [T]he reliability basis is there because of the child's age. We are not sure exactly, of course, the time between the event and the statement, but it appears to have been short enough that it was still real, at least in the child's mind. Further, that the manner in which it was told, and it is corroborated by statements made to other persons.

Although the trial court's finding with respect to reliability is not as comprehensive as it might have been, we nonetheless find it to be adequate. The circumstances in which the statements were made and the age-appropriate language used in the statements support the finding of reliability. Further, the trial court properly considered the age of the child in light of the extensive case authority holding that such statements of very young children relating incidents of sexual abuse tend to be reliable. *See People v. District Court*, 776 P.2d 1083, 1088 (Colo.1989), *Oldsen v. People*, 732 P.2d 1132, 1137 (Colo.1986); *Lancaster v. People*, 200 Colo. 448, 451–52, 615 P.2d 720, 722 (1980); *accord Nelson v. Farrey*, 874 F.2d 1222 (7th Cir.1989); *United States v. Renville*, 779 F.2d 430 (8th Cir.1985); *United States v. Nick*, 604 F.2d 1199 (9th Cir.1979).

### 2. *Unavailability and Corroborative Evidence*

The defendant also argues that the trial court erred in applying section 13–25–129 in that M.W. was not unavailable as a witness within the meaning of subsection (1)(b)(II). We previously considered the definition of "unavailability" in the context of that subsection in *People v. District Court*, where we held that a child who is not competent to testify is unavailable within the meaning of that subsection. 776 P.2d at 1087. We did not consider in that case whether a child who is competent to testify but who would be adversely affected by the traumatic effect of being forced to testify is unavailable within the meaning of that subsection. Here the trial court found that the child M.W. was "medically determined to be unavailable" because of the "possible harm to the child" in having her testify. Adequate evidence in the record supports that finding.

At a pretrial hearing, VanScoyk described in detail M.W.'s physical reactions and the obvious difficulty which M.W. experienced when VanScoyk attempted to discuss the sexual abuse incident with her. VanScoyk stated that even in the benign

---

5. We see no difference between the statutory standard of "sufficient safeguards of reliability" and the *Ohio v. Roberts* standard of "sufficient indicia of reliability."

setting of the Kempe Center, a setting carefully designed to put the child at ease, M.W. became "almost completely shut down, almost to the point of being immobilized." She told of the pain she observed on M.W.'s face when M.W. spoke of the event. VanScoyk indicated that a young child like M.W. does not merely recall the event but actually relives it as she describes it. VanScoyk compared the difficulty M.W. had in relating her story during the Kempe Center interview with the greater difficulty of testifying in court. Specifically, she said that requiring M.W. to testify at trial, before jurors and spectators, would be "totally overwhelming" for the child. She agreed that testifying could cause M.W. a "retraumatization" which could affect her "for years to come." M.W.'s guardian ad litem supported VanScoyk's position. The question before us, therefore, is whether the traumatic effect of testifying in court can properly form the basis of a finding that a child sexual abuse victim is unavailable.

Other courts have considered the issue of whether the possible traumatic effect of testifying is sufficient to find unavailability of the witness within both a statutory and a constitutional context and have found that it is. *Perez v. State,* 536 So.2d 206, 210 (Fla.1988), *cert. denied, Perez v. Florida,* —— U.S. ——, 109 S.Ct. 3253, 106 L.Ed.2d 599 (1989); *State v. Eaton,* 244 Kan. 370, 384–85, 769 P.2d 1157, 1167–68 (1989); *State v. Twist,* 528 A.2d 1250, 1257 (Me.1987); *Wildermuth v. State,* 310 Md. 496, 519–20, 530 A.2d 275, 286–87 (1987). On the other hand, in *State v. Vincent,* 159 Ariz. 418, 768 P.2d 150 (1989), the Arizona high court found that the unavailability requirement could be satisfied if the state shows that the traumatic effect of requiring the child to testify would be so severe that the child would not be able to communicate. The court declined to rule whether trauma alone in the absence of an inability to communicate could properly form the basis for a finding of unavailability. *Vincent,* 159 Ariz. at 433, 768 P.2d at 165.

Many of the courts which have considered the question of trauma and unavailability have required that there be a partic-

ularized finding of a significant risk of harm to the child if she is forced to testify. In *Coy v. Iowa,* 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), the United States Supreme Court struck down an Iowa statute which allowed two child victims of a sexual assault to testify at trial through a large screen placed between them and the defendant during the girls' testimony. The state of Iowa argued that the statute was based upon the important public policy of protecting child witnesses and thus justified an exception to the traditional rule that a defendant has a right to a face-to-face confrontation with his accuser. The Supreme Court did not decide whether there were any exceptions to the literal meaning of the clause which established "a right to *meet face to face* all those who appear and give evidence *at trial."* *Coy,* 108 S.Ct. at 2803 (citation omitted) (emphasis in original).

However, the Court stated that whatever exceptions there may be, they would only be allowed when necessary to further an important public policy. *Id.* The state argued that such necessity was established by the statute, which created a legislatively imposed presumption of trauma for a child witness. In striking down the Iowa statute, the Court noted there had been no individualized findings that these particular witnesses needed special protection. *Coy,* 108 S.Ct. at 2803.

Courts which have interpreted various statutory schemes designed to protect child witnesses since the *Coy* decision have agreed that *Coy* likely requires that there be a particularized finding of trauma or other necessity before any exceptions can be made. *People v. Bastien,* 129 Ill.2d 64, 73, 133 Ill.Dec. 459, 463, 541 N.E.2d 670, 674 (1989) (videotaping of child pursuant to a videotape testimony statute is constitutional only with individualized findings of fact that witness is in need of such protection); *State v. Eaton,* 244 Kan. 370, 384–85, 769 P.2d 1157, 1167–68 (1989) (hearsay statements admissible if it is established by clear and convincing evidence that to require the child to testify in open court will so traumatize the child as to prevent him

from reasonably communicating to the jury). *See also Hochheiser v. Superior Court,* 161 Cal.App.3d 777, 793, 208 Cal. Rptr. 273, 283 (1984) (child abuse victim's unavailability to testify at a defendant's trial owing to possibility of additional injury must be established both in fact as well as in logic and its dimensions must be spelled out in terms of its nature, degree, and potential duration).

We hold that "unavailability," both within the meaning of section 13–25–129, 6A C.R.S. (1987), and of the constitutional requirement as established by *Ohio v. Roberts,* can be met when the court makes a particularized finding that the child's emotional or psychological health would be substantially impaired if she were forced to testify and that such impairment will be long standing rather than transitory in nature. *Accord State v. Twist,* 528 A.2d 1250 (Me.1987). In holding that the potential trauma of testimony by a child victim of a sexual molestation may form the basis of a finding of "unavailability" for both statutory and constitutional purposes, we recognize that this could be viewed as opening a broad exception to the normal rule that a witness ought to testify at trial and that a defendant ought not to be convicted through hearsay testimony. We limit our holding here to the statute in question and do not decide, for example, whether the trauma of testimony would form a sufficient basis of unavailability for purposes of the residuary clause of C.R.E. 804(b)(5) (the residuary hearsay exception which applies when the declarant is unavailable).

■ We emphasize that mere inconvenience or discomfort at the prospect of testifying does not meet the statutory standard of unavailability. Many witnesses would prefer not to testify in a criminal trial and the statute is not intended to be used as a means to circumvent the adversarial process. Here there is no indication that the reason the prosecution did not call M.W. was to circumvent the adversarial process. Furthermore, we agree with *Nelson v. Farrey,* 874 F.2d 1222 (7th Cir.1989), a case which is substantially the same as the one now before us. The Seventh Circuit in *Farrey* approved the admission of hearsay statements made by a three-year-old sexual abuse victim to a clinical psychologist. In accepting the use of the hearsay statements at trial, the court commented:

> The question is whether allowing the statements into evidence created a serious danger of a miscarriage of justice. [The examining psychologist] is a qualified psychologist who ... employed his professional skills in an attempt to elicit truthful statements. No one pretends that such a sifting process is infallible, but we are given no reason to suppose that it is so unreliable that a jury should be forbidden to consider it. If such evidence were never admissible, molesters of small children, especially incestuous molesters, would rarely be punished. It would have been a monstrous cruelty to force [the child] to testify—in a public courtroom, in the presence of the father she feared—to sexual abuse by her father. Who can believe that such a confrontation would have been more likely to elicit truth than to produce sordid drama?

*Farrey,* 874 F.2d at 1229. As in *Farrey* we believe that requiring M.W. to testify in this case would have added little if anything to the truth seeking process.[6] The law does not require a futile act. *Ohio v. Roberts,* 448 U.S. at 74, 100 S.Ct. at 2543. We agree with *Farrey* that we cannot assume that "cross-examination of a four-year-old child concerning sexual abuse by her father a year earlier is a more effective method of discovering the truth than listening to and weighing the testimony of a

---

6. Furthermore, although the trial court did not consider the question, there is a high likelihood in cases such as this, involving a child of such tender years, that the child would not be competent to testify at trial. A child is not competent to testify in a sexual assault proceeding if he or she is unable "to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined." Section 13–90–106(1)(b)(II), 6A C.R.S. (1989 Cum.Supp.); *People v. District Court,* 776 P.2d 1083, 1087 (Colo.1989). A child who is not competent to testify is unavailable both within the meaning of section 13–25–129 and of the *Ohio v. Roberts* test. *People v. District Court,* 776 P.2d at 1087.

competent child psychologist who interviewed the child ... in a setting designed to elicit truthful communication." *Farrey*, 874 F.2d at 1230.

█ Under the facts of this case, where the trial court found that requiring M.W. to testify would be traumatic, where the evidence showed that the trauma would be long lasting rather than transitory, and where the potential benefit to the defendant of requiring M.W.'s testimony was not substantial,[7] we find no error in the court's determination that M.W. was unavailable.

█ The final requirement in order to admit statements under section 13–25–129 when the witness is unavailable to testify at trial is that there be corroborative evidence of the act which is the subject of the statement. Here we find that such corroborative evidence existed in the form of testimony by VanScoyk that M.W. manifested extreme anxiety and apparently masturbated upon being questioned regarding sexual activities with her stepfather. VanScoyk testified that such a physiological reaction is consistent with a child who has actually been sexually assaulted. Further corroborating evidence included testimony by investigator Sandberg that, without giving Diefenderfer any indication of the nature of the accusations against him, Diefenderfer volunteered that he and Brenda occasionally performed sexual acts in front of the children and that M.W. had recently fallen and bruised her vaginal area. This evidence, considered as a whole, is sufficient corroboration to admit M.W.'s hearsay statements.

### B. M.W.'s Statements to Investigator Sandberg

█ The defendant also complained that the court improperly admitted testimony by Gerald Sandberg regarding statements by M.W. describing the sexual abuse here at issue. The court ruled that these statements were admissible under C.R.E. 803(24), the residuary exception to hearsay.[8] We believe that M.W.'s statements made during the interview with Sandberg and the Social Services caseworker were appropriately admitted. However, we find that they should have been admitted under section 13–25–129 and not under C.R.E. 803(24).

We previously have allowed the admission of very similar statements under C.R.E. 803(24). In *Oldsen v. People*, 732 P.2d 1132, 1136–37 (Colo.1986), we held that statements similar to those at issue in this case made to an examining physician as well as a social worker were properly admissible under this exception. However, because it is unclear whether that case was tried after section 13–25–129 went into effect, and because *Oldsen* did not consider whether section 13–25–129 might govern instead of C.R.E. 803(24), it is not controlling on the question of whether C.R.E. 803(24) ought to apply when a more specif-

---

7. Here, the defendant made no showing that he would benefit from the in-court testimony of M.W. On the contrary, defendant's counsel specifically stated to the court that "[w]e have no problem with [M.W.] not testifying." Thus, the defendant did not assert his Sixth Amendment right to compel M.W. to testify in court. Accordingly, we need not address the effect to be given to a showing by a defendant that he has a critical need for the in-court testimony of a witness found to be unavailable because of trauma.

8. Rule 803(24) of the Colorado Rules of Evidence provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

...

(24) **Other Exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

ic statute appears to govern the admissibility of child hearsay statements describing acts of sexual abuse.

Both C.R.E. 803(24) and section 13–25–129 are residuary rules and apply only if hearsay is not otherwise admissible under the other hearsay exceptions. Section 13–25–129, adopted by the legislature in 1983, applies only to hearsay statements "not otherwise admissible by statute or court rule." C.R.E. 803(24), adopted by this court in 1984, applies to hearsay statements which are not covered by the more specific hearsay exceptions in C.R.E. 803(1)–(23). Because section 13–25–129 and C.R.E. 803(24) have different requirements for the admission of hearsay statements, confusion and inconsistent results may occur if either residuary provision may be applied to the same hearsay statement of a child sexual assault victim which is otherwise not admissible into evidence. In our view, the more specific provision (i.e., the statute) should prevail. Thus, we hold that section 13–25–129 is the sole basis upon which hearsay evidence, which otherwise comes within the terms of that statute, may be admitted.[9]

■■■ We nevertheless conclude, however, that under the circumstances of this case the statements made by M.W. to Sandberg and the social services caseworker were properly admissible under section 13–25–129. The statements in question, describing the defendant's sexual conduct with M.W., were nearly identical to those made to VanScoyk. We find that they are admissible for the same reasons that VanScoyk's

testimony was admissible: (1) they are reliable, (2) M.W. was unavailable, (3) there exists corroborating evidence, namely the incriminating statements made by the defendant to Sandberg, and M.W.'s physiological reaction to VanScoyk's questioning regarding the abuse incident.[10]

C. *Vagueness of Section 13–25–129 and C.R.E. 803(24)*

■■■■■ The defendant also alleges that both C.R.E. 803(24) and section 13–25–129 are unconstitutionally vague. Because the defendant did not assert that argument below as to C.R.E. 803(24), we need not consider it here. With respect to section 13–25–129 the defendant has cited no authority which would indicate that this statute is unconstitutionally vague. It is the duty of counsel for appealing parties to inform a reviewing court both as to the specific errors relied upon and as to the grounds, supporting facts and authorities therefor. *Stieben v. Korby*, 533 P.2d 530 (Colo.Ct.App.1975). In any event, we believe that section 13–25–129 provides sufficient guidelines for consistent and fair application in the trial courts.

D. *Section 13–25–129 and Court Rule-making Authority*

■■■ The defendant also argues that section 13–25–129 infringes on this court's procedural rulemaking powers. The defendant once again offers no authority for this broad proposition. However, we believe that section 13–25–129 is analogous to the so-called "rape shield" statute which we

9. Our holding today does not limit the admission of hearsay statements of child sexual abuse victims which are admissible under the more traditional hearsay exceptions of C.R.E. 803(1)–(23).

10. We note that in *People v. McClure*, 779 P.2d 864 (Colo.1989), we held that section 13–25–129(2) requires the court to give a contemporaneous cautionary instruction prior to the admission of hearsay statements pursuant to that section and another instruction when it charges the jury at the conclusion of the case. We do not retreat from that holding. However, in light of our previous decisions supporting the admission of hearsay statements of child victims of sexual abuse under C.R.E. 803(24), under which no

cautionary instruction is needed, the failure to give a cautionary instruction prior to Sandberg's testimony is understandable.

In this case, unlike in *McClure*, the jury did receive the statutory instruction of section 13–25–129(2) on two occasions: once prior to VanScoyk's testimony and again on the charge to the jury. Under these circumstances, the failure to instruct the jury again prior to Sandberg's testimony was not plain error. *See McClure*, 779 P.2d at 867 (plain error exists only if, after reviewing the entire record, we can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction).

upheld as not being in contravention to the court's rulemaking authority in *People v. McKenna*, 196 Colo. 367, 585 P.2d 275 (1978). As with that statute, we believe that section 13–25–129 effects the substantive policy of protecting certain witnesses—in this case child witnesses—from the sometimes traumatizing effect of facing their abusers openly in court. We find no conflict with this court's rulemaking authority.

## III.

### Restricting Defendant's Right to Interview M.W.

■ The defendant argues that the trial court ought to have granted his motion to have his expert Lenore Walker examine M.W. and her brother R.W. We have previously held that absent the infringement of a constitutional right, unless the rules of criminal procedure permit discovery in a particular area then it is not error to deny discovery. *Roybal v. People*, 177 Colo. 144, 493 P.2d 9 (1972). The defendant has cited no statutory or constitutional basis for his claim. Crim.P. 16 governs the obligation of the prosecutor to cooperate with the defendant in the securing of evidence. Thus, for example, the prosecutor is obligated to give the names and addresses of witnesses as well as reports, statements, etc., of experts it intends to use. Crim.P. 16(a). We are satisfied that the prosecutor in this case complied with all of these requirements.

We need not decide here whether the defendant must be given an opportunity to examine a child sexual assault victim who will not testify at trial but whose hearsay statements will be introduced into evidence. In this case, we believe that the defendant had that opportunity. Charges were filed in this case on October 22, 1985. Brenda Diefenderfer had been granted custody of M.W. pursuant to a divorce decree entered in February 1985. From that time until March 13, 1986, when the court awarded custody of M.W. to the Department of Social Services, the Diefenderfers were free to arrange an evaluation of M.W. by an expert of their choice. It appears that shortly after the Social Services' investigation began in August of 1985, the Diefenderfers chose to send M.W. away to live with her maternal grandparents in Nebraska. Nonetheless, the Diefenderfers continued to exercise control over M.W. as indicated by the fact that the defendant's attorney had the Nebraska psychiatrist, Calkins, examine M.W. and intended to use his testimony at trial.

In the Summer of 1986, when Calkins indicated that he would not testify, the defendant sought another chance to have its new expert, Walker, examine M.W. The court denied his request. However, Walker was allowed to examine the videotapes of the examination of M.W. performed by VanScoyk. Indeed, in her testimony at trial, Walker challenged the techniques used by VanScoyk and asserted that because the interview techniques were "contaminated" she could not tell whether or not M.W. had been sexually molested. Also, Truchses, another psychologist who had previously examined M.W. pursuant to an evaluation done for the court in the divorce action between Brenda and Justin, testified for the defendant that he was unable to conclude with any certainty whether or not M.W. had been sexually molested.

The traumatic effect of constantly reviewing an episode such as that alleged to have occurred in this case seems self-evident. In light of these facts, it was not an abuse of discretion for the trial court to deny the defendant's request for further expert evaluation of M.W.

## IV.

### Limiting Cross–Examination of VanScoyk

■ The defendant also claims that the trial court erred in limiting his cross-examination of VanScoyk. The prosecution objected on hearsay grounds whenever the defense counsel sought to elicit from VanScoyk the contents of the Department of Social Services records upon which she had relied. We find that the trial court did not err.

The scope of cross-examination of a witness rests within the discretion of the trial court. *People v. Loscutoff,* 661 P.2d 274 (Colo.1983), and limitations on cross-examination will not be overturned absent an abuse of discretion. It is clear that an expert may be examined as to the basis of her opinion. C.R.E. 705. However, it is also clear that such cross-examination may not be used to circumvent the rules of hearsay. Under C.R.E. 703 it is permissible for an expert to rely on data which itself may be inadmissible. The defendant's counsel asked VanScoyk about the contents of certain Social Services records. However, VanScoyk testified that, while she had read the Social Services records and found them helpful, her opinion was based upon her personal interview with M.W. Thus, the fact that VanScoyk had access to Department of Social Services records which contained numerous reports, letters and administrative forms respecting M.W.'s situation, did not necessarily allow the defendant to enter the contents of such records into evidence, or to review the records through VanScoyk's testimony.

Although C.R.E. 705 provides that the expert "may in any event be required to disclose the underlying facts or data on cross-examination," this principle is not absolute:

> When the expert has testified in summary fashion, the counsel of Rule 705 is that the court should allow wide latitude for cross-examination.... However, the trial judge may certainly impose reasonable limits upon the cross-examination, and he should cut off the attack where its purpose is to support the cross-examiner's case by bringing out inadmissible hearsay rather than simply to undermine the expert's opinion.

3 D. Louisell & C. Mueller, *Federal Evidence,* § 400 at 708–09 (1979).

Furthermore, the mere fact that the opinions of others contained in the Social Services records may have differed from that of VanScoyk is not a reason to bring in the testimony. If Diefenderfer wished to enter into evidence the opinions of various Social Services caseworkers or others, then he should have called them at trial where they could testify subject to full cross-examination.

The defendant argued to the trial court that the purpose of the cross-examination was "impeachment," without further elaboration. However, the mere assertion that the purpose of the questions was to impeach VanScoyk's testimony, when the nature of the asserted impeachment is not obvious, is not enough. We need not decide whether grounds existed for using the contents of those records to impeach VanScoyk. The defendant laid no foundation and offered no argument for such a use. We also need not decide whether any other basis existed for admitting the records under an exception to hearsay. We find that the trial court did not err in limiting the cross-examination of VanScoyk.

## V.

### Court's Refusal to Declare a Mistrial

#### A. Juror Misconduct

The defendant asserts that it was error for the trial court to refuse to declare a mistrial when it became necessary for one of the jurors who had been selected to serve to be disqualified because of pressing business concerns immediately before trial was set to begin. To show that juror misconduct supports a new trial, the defendant must show substantial and undue prejudice. *People v. Hickam,* 684 P.2d 228, 233 (Colo.1984); *People v. Smith,* 620 P.2d 232, 239 (Colo.1980). Because the juror here was discharged prior to trial no prejudice occurred.

#### B. Prosecutorial Misconduct

The defendant objects to certain remarks made by the prosecutor in closing argument. The defendant objects to the following remarks: "I must have had the premonition that Mr. Butler was going to take some cheap shots, and he did.... [M.W.] because of her age, is not a witness here, but in a way, she's on trial...." He also objects that the prosecutor improperly commented on his failure to testify by noting in his closing argument

that "[c]onspicuously absent was no comment on the defendant's own admission on the couch."

The defendant did not object to any of these remarks when they were made. In order for a new trial to be granted on the basis of a prosecutor's remarks in the absence of a contemporaneous objection they must be particularly egregious. *People v. Constant*, 645 P.2d 843 (Colo.), *cert. denied, Constant v. Colorado*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982). We do not believe that the remarks were so prejudicial on their face as to meet this standard. *See Taylor v. People*, 723 P.2d 131 (Colo.1986) (court found no prosecutorial misconduct of such level as to constitute plain error although statements made by prosecutor during closing arguments improperly may have conveyed impression to jury that defense counsel was unethical in conducting the defense).

Because the defendant has not provided us with a record of his closing remarks, we are unable to determine whether the prosecutor's remarks regarding the failure to comment were improper. The remarks were made during the prosecutor's closing argument rebuttal and may have been invited by defense counsel's closing argument. Our review of the record indicates that the prosecutor's remark refers to the testimony by investigator Sandberg that before he gave Diefenderfer any detailed information about the nature of the allegations against him, Diefenderfer volunteered that M.W. must have witnessed sexual activities by him and Brenda on the couch. Thus, the prosecutor's rebuttal remarks may have referred to Diefenderfer's counsel's failure to comment on this very incriminating evidence. Accordingly, we find no plain error in the denial of the defendant's motion for mistrial.

## VI.

### Sufficiency of the Evidence

■ Diefenderfer also argues that there was insufficient evidence to support the verdict on both counts of the amended information. He asserts that no evidence was given to prove when the alleged sexual

assault occurred and further, that there was no evidence indicating that he was the "Dad" to whom M.W. referred in her hearsay statements. He suggests that M.W.'s natural father Justin was the "Dad" in question. We disagree.

Where the sufficiency of the evidence to support a guilty verdict is challenged, an appellate court must review the testimony in the light most favorable to the prosecution. *People v. Jensen*, 747 P.2d 1247, 1253 (Colo.1987). If there is sufficient competent evidence to establish the essential elements of a crime, a guilty verdict will not be overturned by an appellate court even though there are conflicts and inconsistencies in the evidence. *Id., People v. Jones*, 191 Colo. 110, 112, 551 P.2d 706, 707 (1976).

Here we find that the evidence viewed in the light most favorable to the prosecution is adequate to sustain the verdicts on both counts. First, Lenna Curtis testified that M.W. had told her that "Dad" had put his penis between her legs. Curtis also testified that there was no confusion in her mind that the victim referred to the defendant when she used the word "Dad." Second, VanScoyk testified that the victim's statements to her, together with her physiological reactions while giving those statements, indicated that sexual abuse had occurred. Third, VanScoyk confirmed Curtis's conviction that M.W. was referring to the defendant. Finally, the record clearly establishes that Justin, M.W.'s natural father, had no opportunity to commit the sexual assault because he had only two supervised visits with M.W. during the summer of 1985.

As to the aggravated incest charge, which requires proof that the defendant was married to M.W.'s mother Brenda Diefenderfer at the time of the sexual abuse incident, sufficient evidence exists in the record for the jury to have reached this conclusion. Brenda Diefenderfer testified that Lenna Curtis babysat for the family in August of 1985. Both Lenna Curtis and her mother Audrey Curtis testified that they had waited between two weeks to a month before reporting the alleged abuse to the Department of Social Services. The

evidence indicates that the report to Social Services was made in late August of 1985. Thus, the jury properly could have concluded that the particular babysitting episode involved occurred in August 1985, and further, that M.W.'s statements to Lenna Curtis were likely made quite recently after the incident. Thus, the jury could properly have concluded that the abuse incident in this case occurred after the marriage of Brenda to Dan Diefenderfer on June 30, 1985.

We affirm the judgment of the district court.

ERICKSON, J., specially concurs in part and dissents in part.

Justice ERICKSON specially concurring in part and dissenting in part:

The bizarre, sordid, and discordant interrelationships between two families reflect animosity and numerous claims of incest, physical abuse of M.W. by the child's natural father, as well as the physical abuse of M.W.'s mother by her natural father and raise issues relating to the credibility of many witnesses. The factual issues relating to the sexual abuse of a three-year-old child by her stepfather were resolved by the jury. The primary issue is whether a proper foundation was laid for the admission of the three-year-old victim's statements to those investigating the charges. On appeal a number of issues that have grave constitutional implications have been raised which require a remand to the trial court for further factual determinations and possibly a new trial. Although I agree with nearly all of the analysis in the majority opinion, the record does not establish that M.W. was unavailable, either under section 13–25–129, 6A C.R.S. (1987), or the sixth amendment. The test set forth in the majority opinion for admissibility of hearsay statements relating to the sexual abuse of M.W. is not the same test that was applied by the trial judge. Accordingly, a further hearing is required to determine whether the hearsay evidence was admissible under the test announced by the majority and for a new trial if the evidence does not meet the statutory standard in the majority opinion.

The majority correctly concludes that the two-prong analysis of *Ohio v. Roberts*, 448 U.S. 56, 65, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980), and *People v. Dement*, 661 P.2d 675, 680 (Colo.1983), is still required before hearsay, which does not come within a "firmly rooted" exception, may be admitted against the defendant in a criminal prosecution.[1] Thus, the Confrontation Clause mandates that the hearsay declarant be unavailable, and that the statement possess "sufficient indicia of reliability." *Ohio v. Roberts*, 448 U.S. at 65, 100 S.Ct. at 2539; *People v. Dement*, 661 P.2d at 681.

For purposes of analysis, I will assume, as does the majority, that unavailability under the sixth amendment is coextensive with unavailability under section 13–25–129.[2] Some courts which have considered

---

1. The statements made by M.W. to Dr. Van-Scoyk and Investigator Sandberg were admitted pursuant to section 13–25–129 and C.R.E. 803(24), respectively, neither of which can be considered "firmly rooted" exceptions to the rule against hearsay. It is unnecessary, therefore, to decide to what extent the *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, analysis is still constitutionally required when the hearsay comes in through a "firmly rooted" exception. *See Bourjaily v. United States*, 483 U.S. 171, 184, 107 S.Ct. 2775, 2783, 97 L.Ed.2d 144 (1987); *United States v. Inadi*, 475 U.S. 387, 401, 106 S.Ct. 1121, 1129, 89 L.Ed.2d 390 (1986).

2. There is a strong argument, however, that "unavailability" under section 13–25–129 is stricter than under the Confrontation Clause. The phrase in section 13–25–129, "unavailable

as a witness," is the same language used in C.R.E. 804(a). During the same session of the General Assembly that enacted section 13–25–129, section 18–3–413, 8B C.R.S. (1986), providing for videotape depositions of child victims of sexual offenses, was enacted. Section 18–3–413 allows for the introduction into evidence of the videotape depositions if "the victim is likely to be medically unavailable *or otherwise unavailable within the meaning of rule 804(a) of the Colorado rules of evidence.*" (Emphasis added.) Thus, the General Assembly specifically included "medically unavailable" in section 18–3–413, but not in section 13–25–129. We have recently held that section 13–25–129 must be strictly construed in favor of the defendant. *People v. McClure*, 779 P.2d 864, 866 (Colo.1989).

the sixth amendment question as it pertains to the out-of-court statements or testimony of child victims of sexual abuse after *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), have concluded that there must be a particularized and individualized finding of a *significant risk of substantial or severe psychological or emotional harm* to the child before the statements or testimony may be admitted. *Perez v. State*, 536 So.2d 206 (Fla.1988); *State v. Chisholm*, 245 Kan. 145, 777 P.2d 753 (1989) (apparently backing away from the even more stringent requirements of *State v. Eaton*, 244 Kan. 370, 769 P.2d 1157 (1989)); *State v. Twist*, 528 A.2d 1250 (Me. 1987). The majority holds that " 'unavailability,' both within the meaning of section 13–25–129, and of the constitutional requirement as established by *Ohio v. Roberts*, can be met when the court makes a particularized finding that the child's emotional or psychological health would be substantially impaired if she were forced to testify and that such impairment will be long standing rather than transitory in nature." Maj. op. at 749–750.

Other courts have an even stronger requirement that the mental or emotional trauma render the child unable to communicate to the jury before he or she is "unavailable." *State v. Vincent*, 159 Ariz. 418, 768 P.2d 150 (1989); *Craig v. State*, 316 Md. 551, 560 A.2d 1120 (1989); *State v. Taylor*, 562 A.2d 445 (R.I.1989). Even assuming that the risk of severe psychological or emotional harm is sufficient to show unavailability under the Confrontation Clause and section 13–25–129, I do not believe such a showing was made here. The guardian ad litem of the child, who was an attorney and not a psychiatrist or psychologist and had talked to M.W. for a total of about thirty minutes before the hearing on unavailability was held, testified that "it would be detrimental to [M.W.] if this situation is constantly made important in her life," and "it is my recommendation that [M.W.] not be here to testify."

The only other witness upon whom the trial court relied to find M.W. unavailable to testify was Dr. Susan VanScoyk. She stated that the impact of testifying in a courtroom setting could be "very traumatic" for M.W.:

Q [By the prosecutor]. Could you tell us, in your opinion, what impact [the courtroom setting] alone would have on someone like M.W. and on her?

A [Dr. Van Scoyk]. Well, I think for a child her age in general, and especially children who have been through some traumatic event and who have already been through several interviews with regards to that, it can be even—it can accentuate the trauma in a way; and that is that children this age tend to feel responsible for things to begin with.

And especially for children who have been through situations where they've been taken from the home, placed in other homes, they begin to feel as if they've done things very wrong to have this all come about.

And I think just the fact, again, of accentuating the event, of sitting here in front of people who she has—has been attached to currently, in the past, it would be very complicated and very traumatic for her.

Q. What mental or physical harm could come to her if she was forced to appear and asked the same questions that you asked her back in February, in front of all these strangers, except for the defendant?

A. Well, I think, number one, again, it is the fact that I think children tend to relive the event, especially—well, clearly traumatic events in the retelling. So I think, number one, it would be a retraumatization of [M.W.] in this setting.

Number two, children who have been in abusive situations in general tend to find it very difficult to speak out against people whom they have been dependent upon, and, also, who they love in some ways, too; and that would be a second problem, I think, for [M.W.].

Q. *Would it be possible that if she was sitting where you are right now, she would become, as you indicated, immobilized or freeze?*

A. *I think it's very possible.*

Q. As a doctor and as a child psychiatrist, you believe it is in [M.W.'s] best interest to not come here and be forced to testify?

A. No. I don't think it's in her best interest.

Q. Do you think that it could—well, you heard my opening remarks to the judge about soldiers from Vietnam reliving. Can [M.W.]—can that happen to her, too?

A. It can, yes.

Q. And what would happen if she had to go through that?

A. Well, I think children her age, and especially for [M.W.], they are even at more a disadvantage than adults having been through traumatic events in that they don't have the ability to really put it in perspective. It, again, is totally overwhelming for them; as with an adult, you would be a little bit more well equipped to handle it, put it in perspective and deal with it.

Q. Could this affect her for years to come if she was forced to come here?

A. Yes, it could.

Q. And if she was in any kind of treatment mode at this time—*which I don't believe she is*—I mean professional treatment, would this set her back and cause a more intensive hands-on type treatment for her?

A. Yes, it could.

(Emphasis added.) After hearing this testimony, the trial judge ruled that "the child will not testify, and accordingly, is medical-

ly determined to be unavailable since the possible harm to the child in doing so [sic]."

The trial judge did not find that the child would suffer *severe* psychological or emotional harm if forced to testify; nor, on the evidence presented at the hearing, would he have been justified in doing so. On the other hand, at the time the hearing was conducted, the trial judge did not have the benefit of the opinion issued on this appeal. I would, therefore, remand the case for the limited purpose of determining whether M.W. was unavailable to testify because of an inability to communicate with the jury because of psychological or emotional trauma, or because she would be exposed to a significant risk of severe emotional or psychological harm.[3]

I cannot agree with the majority, however, that the statements to Sandberg were properly admitted under section 13–25–129. We have just recently held that failure to give the cautionary instruction of subsection 13–25–129(2) both contemporaneously with the introduction of the hearsay and in the court's general charge is reversible error. *State v. McClure*, 779 P.2d 864, 866–67 (Colo.1989). No such instruction was given with respect to Sandberg's testimony, either contemporaneously or in the general charge. This is not surprising since, as the majority notes, M.W.'s statements to Sandberg were admitted under C.R.E. 803(24), not section 13–25–129. Analysis under the plain error standard is accordingly inappropriate. If, as the majority holds, C.R.E. 803(24) is no longer available as an exception to the rule against hearsay if

---

3. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, requires sufficient indicia of reliability where, as here, the statement is not admitted pursuant to a "firmly rooted" exception to the rule against hearsay. Section 13–25–129 also requires corroboration if the declarant does not testify at trial. I agree with the majority that M.W.'s statements to Dr. VanScoyk have sufficient indicia of reliability to be admitted, but I would do so on a case-by-case basis, and would eschew, and disapprove of, the approach taken by the majority in taking judicial notice of the reliability of statements by young child victims of alleged sexual abuse. Such an approach does violence to the Confrontation Clause in the sixth amendment and is not consistent with a majority of the case law. *See United States v. Marchini*, 797 F.2d 759, 764 (9th Cir.1986), *cert. denied*,

479 U.S. 1085, 107 S.Ct. 1288, 94 L.Ed.2d 145 (1987); *United States v. Barlow*, 693 F.2d 954, 964 (6th Cir.1982), *cert. denied*, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983); *see also* Graham, *The Confrontation Clause, the Hearsay Rule, and Child Sexual Abuse Prosecutions: The State of the Relationship*, 72 Minn.L.Rev. 523, 564 n. 212 (1988). In addition, I also recognize that the corroboration requirement can be met, at least in part, by the nonassertive conduct of the child during the interview when the statements are made. *See State v. Jones*, 112 Wash.2d 488, 497, 772 P.2d 496, 501 (1989). The apparent lack of physical evidence is somewhat troubling but is not inconsistent with the statements made by M.W., at least to Dr. VanScoyk.

section 13–25–129 applies, it is unclear how Sandberg's testimony could have been admitted.

In addition, section 13–25–129 does not apply to the statements made to Sandberg because of the lack of corroboration. The statement given by M.W. to Sandberg indicated that penetration occurred, yet Sandberg himself testified that he did not believe there was penetration and thus he did not recommend that M.W. be physically examined.

I would therefore remand this case for the limited purpose of determining if M.W. was "unavailable" at the time of trial under the sixth amendment and section 13–25–129. The trial court should hold a hearing at which testimony relevant to this issue can be received. If, after hearing both sides, the trial court concludes that M.W. was unavailable at the time of trial under the standard announced today, a new trial is not required. If, however, that standard cannot be met, a new trial should be granted.

Sexual abuse of children is an extremely serious problem and offense, and when it is proven to have occurred it should be dealt with appropriately, which in the normal case calls for severe punishment. However, our distaste for the offense cannot and should not result in an exception to protections afforded by the Constitution, especially where, as here, a conviction is obtained entirely on hearsay evidence. Although a number of witnesses testified for the prosecution, they were allegedly reporting the statements of a three-year-old child, M.W. It is especially important to scrupulously observe the requirements of the sixth amendment and the rule against hearsay when the sole evidence supporting the defendant's conviction is hearsay testimony consisting of a number of somewhat different versions of what M.W. said happened when she was with her stepfather. Efficient prosecution of such cases can be accomplished within the context and constraints of the Constitution. Accordingly, I concur in part and dissent in part to the majority opinion, and would remand for further proceedings by the trial court.